FILED

2011 DEC -7 PM 3: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

COPY

1  MARC M. SELTZER (54534)
   mseltzer@susmangodfrey.com
2  SUSMAN GODFREY L.L.P.
   1901 Avenue of the Stars, Suite 950
3  Los Angeles, CA 90067-6029
   Telephone: (310) 789-3100
4  Fax: (310) 789-3150

5  THOMAS G. FOLEY, JR. (65812)
   tfoley@foleybezek.com
6  JUSTIN P. KARCZAG (223764)
   jkarczag@foleybezek.com
7  FOLEY BEZEK BEHLE & CURTIS LLP
   15 West Carrillo Street
8  Santa Barbara, CA 93101
   Telephone: (805) 962-9495
9  Fax: (805) 962-0722

10 JOHN A. STILLMAN (43731)
   jstillman@goodwildman.com
11 GOOD WILDMAN HEGNESS & WALLEY
   5000 Campus Drive
12 Newport Beach, CA 92660
   Telephone: (949) 955-1100
13 Fax: (949) 833-0633

14 Attorneys for Plaintiffs

15 (See Signature Page for Names and Addresses
   of Additional Counsel for Plaintiffs)

16

17                    **UNITED STATES DISTRICT COURT**

                      **CENTRAL DISTRICT OF CALIFORNIA**
18

19 JEFFREY SCHULEIN and LINDA
   SCHULEIN, as Trustees of the Schulein      Case No. SACV11-1891-AG (ANx)
20 Family Trust established March 29, 1989
   and governed by agreement dated            **CLASS ACTION**
21 December 5, 2002; and CHRISTOPHER J.
   RODENFELS, as Trustee of The
22 Christopher J. Rodenfels 2000 Revocable     **COMPLAINT FOR VIOLATION**
   Trust established May 10, 2000,             **OF THE FEDERAL SECURITIES**
23 Individually and on Behalf of All Others    **LAWS AND BREACH OF**
   Similarly Situated,                         **FIDUCIARY DUTY**
24
                        Plaintiffs,
25                                             **JURY TRIAL DEMANDED**
                   vs.
26
   PETROLEUM DEVELOPMENT
27 CORPORATION and 2004 MERGER
   SUB LLC,
28
                        Defendants.

2071801v1/012711

## I.    NATURE OF THE ACTION

1.    This is a class action brought on behalf of all persons and entities who owned limited partnership units in one or more of eleven related limited partnerships (collectively, the "Partnerships") formed by defendant Petroleum Development Corporation (now doing business as PDC Energy) ("PDC") which were acquired by PDC by means of mergers effectuated by the use of virtually identical proxy statements issued to the limited partners.[1]  As alleged below, those proxy statements were materially false and misleading and omitted material facts relating to the value of the assets held by the Partnerships.  The mergers cashed out the limited partners at grossly unfair prices and thereby enriched PDC at the limited partners' expense.  By this action, plaintiffs seek damages, restitution and equitable relief for themselves and the members of the Class, as defined in paragraph 14 below.

2.    Defendant PDC is a domestic independent natural gas and crude oil company.  PDC owns, operates and manages natural gas and crude oil properties located predominantly in Colorado (the Denver-Julesburg (D-J) and Piceance Basins), Texas (the Permian Basin) and West Virginia (the Appalachian Basin).  Over a period of several years, PDC formed numerous limited partnerships to raise funds to finance the acquisition and development of oil and gas properties, and attracted thousands of investors who paid hundreds of millions of dollars for their limited partnership interests.   After raising these funds from investors, which enabled PDC to acquire and develop these properties, PDC decided to acquire all of the partnerships' assets for itself and to do so at unfairly low prices.  To that end, PDC conceived and implemented a common scheme and plan to take all of the

---

[1] The Partnerships at issue were known as 2003-A Limited Partnership, 2003-B Limited Partnership, 2003-C Limited Partnership, 2003-D Limited Partnership, 2004-A Limited Partnership, 2004-B Limited Partnership, 2004-C Limited Partnership, 2004-D Limited Partnership, 2005-A Limited Partnership, 2005-B Limited Partnership, and Rockies Region Private Limited Partnership.

partnerships private by the end of 2012, by means of virtually identical proxy statements accomplished through a single entity, its wholly-owned subsidiary, defendant DP 2004 Merger Sub LLC (Merger Sub), and acquire all of the assets and the interests of the limited partners through cash out merger transactions.

3.    The eleven Partnerships at issue in this action were formed by PDC to obtain financing for oil and gas exploration and development in both the D-J and Piceance Basins.    The interests the Partnerships owned in those oil and gas properties are very valuable.    The D-J Basin includes the Wattenberg field. According to PDC, the Wattenberg field, including the Niobrara formation, is PDC's "chief growth driver" in the Rocky Mountain Region, and is one of PDC's "most prized assets."   PDC has recently described the wells drilled in this field to be "very economic."   The Piceance Basin fields are also deemed by PDC to be among its important "core" assets.

4.    Other oil and gas companies are also exploiting the Wattenberg field. On November 16, 2011, the Wall Street Journal reported that Anadarko Petroleum Corp. announced that the minerals it controls in the Wattenberg field may hold more than a billion barrels of recoverable oil and natural gas.   The Wall Street Journal said the "disclosure could vault Colorado's Wattenberg field into the ranks of major oil developments in the United States, joining the Bakken Shale in North Dakota and the Eagle Ford in South Texas."   Anadarko said "it expects its production from the region to grow at a compound annual rate of 20% between 2010 and 2012," and that its wells will ultimately yield between 500 million and 1.5 billion barrels of oil, natural gas liquids and natural gas.   The Wall Street Journal noted that "Only a handful of billion-barrel fields have ever been found in the U.S."

5.    Because the Partnerships' limited partnership units were registered with the Securities Exchange Commission (SEC) pursuant to section 12 of the Securities Exchange Act of 1934 (the "1934 Act"), PDC could accomplish this

acquisition only by soliciting the votes of the limited partnerships through proxy statements that complied in every respect with section 14 of the 1934 Act and the SEC Rules and Regulations promulgated thereunder. The proxy statements were thus an "essential link" in the accomplishment of the scheme.

6.    PDC accordingly prepared and issued proxy statements to the limited partners. Those proxy statements, which are virtually identical in content, contained materially false and misleading statements and omitted to state material facts relating to the value of the assets of the Partnerships and the units held by the limited partners. The proxy materials portrayed the value of the partnerships' units to be, under most measures, less than what would be paid to limited partners upon consummation of the mergers.

7.    By virtue of § 14(a) of the 1934 Act, full and fair disclosure of all material facts is required with regard to any management-submitted proposals that will be subject to a shareholder vote. The making of material misstatements and omissions in connection with the solicitation of proxies is prohibited. Further, as the sole managing general partner of each of the Partnerships, PDC had a fiduciary obligation to deal fairly with the limited partners and to fully and fairly disclose to them all material information known by PDC about the value of the Partnerships' assets. In spite of these fiduciary obligations, PDC failed to disclose material information about the true value of the Partnerships' assets and took advantage of the limited partners so that it could buy their interests at grossly unfair prices.

## II.    JURISDICTION AND VENUE

8.    The claims asserted herein arise under section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R § 240.14a-9, promulgated thereunder by the SEC and state law for breach of fiduciary duty. Jurisdiction is conferred by § 27 of the 1934 Act, and 28 U.S.C. §§ 1331, 1337 and 1367.

9.    Venue is proper in this district pursuant to § 27 of the 1934 Act and 28 U.S.C. § 1391(a)(2) because false statements were made to plaintiffs and other class

4

2071801v1/012711

members who reside in this district and acts giving rise to the violations complained of occurred in this district.

### III. **THE PARTIES**

10. Plaintiffs Jeffrey Schulein and Linda Schulein ("Schuleins"), as Trustees of the Schulein Family Trust established March 29, 1989 and governed by agreement dated December 5, 2002 ("Schulein Trust"), are residents of Orange County, California. The Schulein Trust was a limited partner in the 2003-B, Limited Partnership, 2005-B, Limited Partnership, and Rockies Region Private, Limited Partnership.

11. Plaintiff Christopher J. Rodenfels ("Rodenfels"), as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000 ("Rodenfels Trust"), is a resident of Signal Hill, California. The Rodenfels Trust was a limited partner in 2004-D Limited Partnership, 2005-A Limited Partnership, 2005-B Limited Partnership and Rockies Region Private Limited Partnership.

12. Defendant PDC is a corporation organized under the laws of the State of Nevada, with its principal executive offices located at 1775 Sherman Street, Suite 3000, Denver, Colorado 80203. PDC is an independent natural gas and crude oil company engaged in the exploration for and the acquisition, development, production and marketing of natural gas, natural gas liquids and crude oil.

13. Defendant Merger Sub is a direct, wholly-owned subsidiary of PDC and was organized as a limited liability company under the laws of the State of Delaware. Merger Sub was formed on May 7, 2010, solely for the purpose of effecting the buyout of the class members' interests in the Partnerships. The principal executive offices of Merger Sub are located at 1775 Sherman Street, Suite 3000, Denver, Colorado 80203.

2071801v1/012711

5

## IV.    CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action on their own behalf, and on behalf of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Class is defined as:

> All persons and entities who owned partnership units in one or more of the limited partnerships 2003-A Limited Partnership, 2003-B Limited Partnership, 2003-C Limited Partnership, 2003-D Limited Partnership, 2004-A Limited Partnership, 2004-B Limited Partnership, 2004-C Limited Partnership, 2004-D Limited Partnership, 2005-A Limited Partnership, 2005-B Limited Partnership, and Rockies Region Private Limited Partnership that were acquired by DP 2004 Merger Sub LLC. Excluded from the Class are defendants and their directors, officers, employees and agents.

15.    The members of the Class are so numerous that joinder of all members is impracticable.  Each Partnership had between 400 and 1700 limited partners at the time of the mergers at issue in this action.  While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are several thousand members of the Class.  Absent members of the Class may be identified from records maintained by defendants and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

16.    Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by defendants' wrongful common course of conduct complained of herein.

17.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      (a)    whether defendants violated the federal securities laws;

      (b)    whether the fair value of the Partnerships' oil reserves was understated in the proxy statements;

      (c)    whether the proxy statements misrepresented or omitted material facts about the values of the oil and natural gas reserves in which the Partnerships owned an interest;

      (d)    whether defendants breached their fiduciary duties of good faith and fair dealing, including their fiduciary duty of candor, to the members of the Class; and

      (e)    the extent to which the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.    The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## V.    DEFENDANTS' WRONGFUL COURSE OF CONDUCT

20.    In 2003, PDC issued a prospectus outlining its plan to form the 2003 Partnerships.  On January 6, 2004, PDC issued a prospectus as part of its "PDC 2004-2006 Drilling Program."    Under this program up to twelve limited partnerships would be formed by PDC, as the managing general partner, which PDC would use to obtain financing from investors to drill, own and operate natural

gas and oil wells in Colorado, Michigan, North Dakota, Alabama, West Virginia, Pennsylvania, Utah and other states.

21.    Between June 3, 2003 and December 6, 2005, PDC formed the eleven Partnerships at issue in this action.  During that period, 10,868 persons and entities collectively invested over $294 million for their limited partnership units in the following Partnerships:

2003-A Limited Partnership, formed on June 3, 2003;

2003-B Limited Partnership, formed on June 13, 2003;

2003-C Limited Partnership, formed on September 26, 2003;

2003-D Limited Partnership, formed on September 25, 2003;

2004-A Limited Partnership, formed on April 9, 2004;

2004-B Limited Partnership, 2004-C Limited Partnership and 2004-D Limited Partnership, formed on July 28, 2004;

2005-A Limited Partnership, formed on November 30, 2004;

2005-B, formed on February 8, 2005; and

Rockies Region Private Limited Partnership, formed on December 6, 2005.

22.    PDC served as the sole managing general partner of each of the Partnerships and exercised full and exclusive control over all of the activities of each of the Partnerships.

23.    Subsequently, PDC acquired the rights to explore and develop various oil and gas fields and transferred those rights to the Partnerships, as it represented it would do in the prospectuses for each of the Partnerships.  By creating these Partnerships, and attracting investors to become limited partners, PDC was able to raise sufficient capital to conduct exploration and drilling operations in these fields. The Partnerships utilized the contributed capital to acquire and develop leaseholds in the Wattenberg field and other areas of Colorado.  Those mineral rights included the right to drill wells to extract oil and gas from the Niobrara formation and other

8

oil and gas producing zones contained within the Wattenberg field and the Piceance field.

24.    Each of the Partnerships acquired interests in, *inter alia*, leaseholds, oil and gas reserves, accounts receivables, infrastructure to extract and transport oil and gas, oil stored in tanks which had not yet been sold, and cash.

25.    The limited partners received cash distributions based on the production from the leaseholds and interests owned by each Partnership. PDC represented to the limited partners that they would receive these distributions so long as revenue from the wells exceeded the expenses incurred during drilling. PDC also represented that most successful wells continue to produce for twenty years or more. Section 3.02, subsection (a) of each of the partnership agreements stipulated that, as the managing partner, PDC retained 20% (30% in the case of Rockies Region Private Limited Partnership) of the profits earned from the sale of natural gas and oil produced from each Partnership's wells.

26.    Because of PDC's full and exclusive control over the activities of each Partnership, the partnership agreements established that PDC, as the sole managing general partner, owed a fiduciary responsibility to each Partnership and the limited partners. Subsection (o) of section 5.02 of each of the partnership agreements, entitled "Conduct of Operations," states:

> The Managing General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership, whether or not in the Managing General Partner's possession or control, and shall not employ or permit another to employ such funds or assets in any manner except for the exclusive benefit of the Partnership.

27.    Subsection (c) of Section 5.02 of each of the partnership agreements states:

2071801v1/012711

All transactions between the Partnership and the Managing General
Partner or its Affiliates shall be on terms no less favorable than those
terms which could be obtained between the Partnership and
independent third parties dealing at arm's-length, subject to the
provisions of Section 5.07 hereof.

28.    Section 5.07, subsection (k) of each of the partnership agreements,
prohibits PDC, as the managing general partner, along with any of its affiliates,
from purchasing or acquiring any property from the Partnerships, directly or
indirectly, unless such a purchase or acquisition is pursuant to a transaction that is
fair and reasonable to the limited partners, subject to the following conditions:

A sale, transfer or conveyance, including a farmout, of an undeveloped
property from the Partnership to the Managing General Partner or an
Affiliate, other than an affiliated program, must be made at the higher
of cost or fair market value.

29.    Section 7.08, subsection (d) of each of the partnership agreements,
provided that the agreement could be amended by a majority of the limited partners
entitled to vote based on their ownership of then outstanding partnership units.

30.    Each Partnership possessed the right to further develop its assets.
Such development included the right of the Partnerships to utilize hydro-fracturing
to further develop its existing wells to increase the amount of oil and gas that could
be extracted.   The Partnerships also possessed the right to develop new, vertical
"infill" wells based on a change in local regulations that allowed additional wells to
be drilled in the Wattenberg field.   The Partnerships also possessed the right to
develop horizontal wells in the Niobrara formation in the Wattenberg field.   PDC
knew at the time the proxies in question were solicited that infill wells and
horizontal wells would substantially increase the volume of oil and gas that each
Partnership could produce.

2071801v1/012711

10

31.    In October 2010, PDC issued proxy statements to the limited partners in the 2004 Partnerships (2004-A Limited Partnership; 2004-B Limited Partnership; 2004-C Limited Partnership; and 2004-D Limited Partnership).  In those proxy statements, PDC stated that it had decided to buy out the limited partners because its corporate strategy had "changed" since it initially formed the Partnerships. PDC said:

> Drilling partnerships are not part of PDC's strategic plan going forward, and PDC wishes to buy them back, to the extent feasible. PDC has not established a drilling partnership since 2007 and has publicly announced a fundamental shift in its business strategy away from the partnership model to a more traditional exploration and production company model.  In 2008, PDC eliminated from its strategic plan the use of sponsored drilling partnerships as a method of raising capital to fund development of PDC's undeveloped properties due to availability of internally generated cash flow from operations and external borrowing capacity under its line of credit.  PDC currently believes these other sources of financing are sufficient to meet its futures capital needs under its strategic plan.  Due to the limited availability of properties and third-party drilling and completion services, PDC believes that this method of financing allows PDC to obtain 100% of the working interest in wells developed, while achieving a higher growth rate for both production and reserves and a better economic return to its shareholders.  PDC anticipates that the merger will provide PDC with an immediate increase in its share of the partnership's production and proved reserves since PDC will obtain from the investors the equity of the partnership not currently owned by PDC.  PDC also wishes to position itself as a growth company.  The merger will provide PDC with growth in both

11

2071801v1/012711

production and reserves from assets with which it is very familiar, and will permit PDC to invest further capital in those assets on a timetable of its own choosing.

32.     In February 2011, PDC issued nearly identical proxy statements to the 2005 Partnerships (2005-A Limited Partnership; 2005-B Limited Partnership; and Rockies Region Private).   These statements contained similar statements concerning the change in PDC's corporate strategy away from the limited partnership drilling programs toward "a more traditional exploration and production company model."

33.     In September 2011, PDC issued nearly identical proxy statements to the 2003 Partnerships (2003-A Limited Partnership, 2003-B Limited Partnership, 2003-C Limited Partnership and 2003-D Limited Partnership).   These statements contained similar statements concerning a change in PDC's corporate strategy away from the limited partnerships drilling programs and toward "a more traditional exploration and production company model."

34.     Each of the proxy statements issued to the limited partners in October 2010, February 2011 and September 2011 included a virtually identical proposed merger agreement whereby, upon approval by the limited partners, Merger Sub would merge with each Partnership.   Upon completion of the merger, the separate existence of the Partnerships would cease and Merger Sub would survive as each Partnerships' successor-in-interest.

35.     Each of the proxy statements urged the limited partners to vote in favor of the proposed merger and in favor of an amendment to the partnership agreement that would allow a simple majority of the limited partners to be sufficient to approve a merger and eliminate the right of any dissenting limited partner to maintain a continuing interest in the surviving entity of such a merger. PDC urged the limited partners to approve the merger by including a section in each of the proxy statements titled "The Partnership's Reasons for the Merger,"

which stated that declining natural gas prices along with the prospect of prolonged reductions in cash distributions to all of the limited partners offered compelling reasons for the limited partners to agree to the proposed mergers.

36.    At the time the proxy statements were issued to the limited partners, PDC had been holding back a certain percentage of the cash distributions owed to the limited partners under each of the partnership agreements.    PDC was withholding these funds so it could build a cash reserve for drilling operations that PDC did not plan to conduct on behalf of the Partnerships.    This hold back artificially depressed distributions to the limited partners.    PDC claimed in each of the proxy statements that the revenue from the Partnerships' assets would not be able to support the future development of the Partnerships' assets.    As a consequence, PDC asserted that the cash distributions owed to the limited partners would continue to be reduced in order to fund the development of each Partnership's assets.    PDC also claimed that it was likely that it would have to continue to withhold these distributions from the limited partners at varying levels up to 100%, and that this could go on for as many as five more years.

37.    PDC acknowledged in each of the proxy statements that both PDC and its Board of Directors had a conflict of interest with the limited partners in connection with the proposed mergers because they owed conflicting fiduciary duties to PDC's shareholders and the limited partners in setting the price to be paid to the limited partners and in structuring the mergers. Because of this conflict, PDC appointed a "special committee" of four non-employee members of its Board of Directors.    This committee commissioned a "fairness opinion" and hired an investment banker, Houlihan Lokey, to prepare a written "fairness opinion" that would be disseminated to the limited partners with the proxy statements.    Each of the proxy statements include Houlihan Lokey "fairness opinion" which states that the consideration to be received by the limited partners in the proposed merger was "fair to such unaffiliated holders of limited partnership interests from a financial

13

point of view." The "fairness opinion" prepared by Houlihan Lokey states that it reviewed "certain oil and gas reserve reports prepared by the Managing General Partner's independent oil and gas reserve engineers (the "Reserve Reports") containing estimates with respect to the Limited Partnership's oil and gas reserves." Houlihan Lokey goes on to state that "we have not been requested to make, and have not made, any physical inspection or independent appraisal of evaluation of any of the assets, properties, or liabilities of the limited partnership or any other party, nor were we provided with any such appraisals or evaluation, other than the Reserve Reports."

38.    In a section titled "Recommendation Regarding the Proposed Merger Transaction," each proxy statement stated that the special committee "encourages [the limited partner] to vote FOR the proposals to approve the amendment and the merger agreement."

39.    The partnership agreements allowed for the merger of the drilling partnership with another entity if a majority of the limited partners voted to approve the merger. The partnership agreements further provided that in the event that a merger were approved, any limited partner who voted against the merger was required to be offered a choice between maintaining a continuing ownership interest in the surviving entity or receiving cash in an amount equal to the limited partner's pro rata share of the appraised value of the partnership's net assets. The first step in the going private process was to obtain a vote from the partners eliminating the right to obtain a continuing interest in the surviving entity. The second was to approve the cash out merger transaction. Both steps were accomplished at the same time by means of the same proxy statement for each Partnership.

40.    Under applicable SEC regulations and industry practice, two main categories of oil and gas reserves are recognized, namely, proved and unproved. Unproved reserves are further subclassified as probable and possible. Proved reserves, in turn, are subclassified as developed or undeveloped. The estimated

14

value of proved reserves, as defined by the SEC's rules, is required to be disclosed in financial statements filed with the SEC.

41.    In January 2009, the SEC revised its oil and gas reporting requirements, effective January 1, 2010.  *See* "Modernization of Oil and Gas Reporting," 74 Fed. Reg. 9 (Jan. 14, 2009).   A major change in the revised disclosure rules related to the treatment of probable and possible reserve valuations. Where the previous version of the SEC's rules had allowed oil and gas companies to disclose proved reserves only, the revised rules allow companies to disclose both probable and possible reserves. *Id.* at 2172.  The SEC noted that "numerous oil and gas companies already disclose unproved reserves on their Web sites and in press releases," and that this practice "does not appear to have caused confusion in the market." *Id.* at 2173.  In its own financial statements filed with the SEC and other public statements, PDC has disclosed information regarding both its proved and unproved reserves.

42.    In addition to changing the treatment of unproved reserves, the revised SEC rules feature new definitions applicable to proved reserves.  Under the revised rules, the focus is on the "final product" of "oil and gas production activities," not on the particulars of the oil extraction technology used.  74 Fed. Reg. 9 at 2163. Further, the revised rules include in their definition of proved undeveloped reserves those reserves that are found in "drilling units" immediately adjacent to units containing producing wells as well as drilling units beyond immediately adjacent drilling units.  74 Fed. Reg. 9 at 2165.[2]

43.    The proxy statements for each of the eleven partnerships set forth valuations for both proved and unproved reserves.  For the proved reserves, PDC based its estimate of value on a future production curve consistent with a report from Ryder Scott Company, L.P. (Ryder Scott) a petroleum engineering consulting

---

[2] "A drilling unit refers to the spacing between wells required by some local jurisdictions to prevent wasting resources and optimize recovery." *Id.* at n.104.

firm that valued the reserves as of December 31, 2009, but used more current pricing and higher future net income discount rates. At the instruction of PDC, Ryder Scott's report did not include any estimate of the value of any unproved reserves. Instead, in the proxy statements for each of the Partnerships, PDC valued all of the Partnerships' unproved reserves at $10,000 per drilling location, with no disclosure as to how it arrived at that valuation. The $10,000 per drilling location value it attributed to unproved reserves only takes into account infill wells, not horizontal wells. Indeed, no value whatsoever was assigned by PDC in the proxy statements to any horizontal wells.

44.    These reserve valuations failed to take into account technological developments that PDC itself has publicly touted as likely to give rise to substantially increased revenues:    infill drilling and enhanced recovery from horizontal drilling. Since 2009, "infill wells" can be drilled in the same producing formations as a result of a change in Colorado state regulatory requirements that allows wells to be drilled on twenty acre spacing. In addition to "infill wells," PDC also planned to drill horizontal wells into producing formations already developed by the drilling partnerships' vertical wells. PDC has already begun to drill infill wells and horizontal wells and plans to drill more. PDC reported earlier this year that PDC drilled and completed its first horizontal Niobrara well in the fourth quarter of 2010. PDC recently trumpeted its success with this well. PDC reported that the well tested a 24-hour peak rate of 625 barrels of oil equivalent per day. PDC also reported it has budgeted a 14-well horizontal Niobrara drilling program for 2011.

45.    However, if infill wells and horizontal drilling are taken into account, the net present value of the net income to be derived from the partnership's reserves would greatly exceed the amount the limited partners received when they were cashed out. Taking one of the partnerships, PDC 2004-D, as an exemplar, the limited partners were paid approximately $13.2 million for their limited partnership

units. That partnership had 44 vertical wells at the start of 2010. If 32 infill wells and eight Niobrara horizontal wells were included in the estimated value of the assets held by PDC 2004-D, the value of the reserves would be more than $100 million, using the SEC's 10% present value discount rate.[3]

46.    The estimated discounted future net income from the infill wells alone (which are estimated to be worth approximately $40 million) should have been disclosed in the proxy statements. Regardless of whether they were properly characterized as proved or unproved reserves, the estimated value of the reserves accessible by infill wells and by horizontal drilling using assumptions about production, commodity prices and costs that are similar to those that were used to value the proved reserves were known to PDC and should have been disclosed in the proxy statements, and the failure to disclose those values rendered the proxy statements materially false and misleading.

47.    Before it solicited the limited partners to vote for the mergers, PDC began reducing monthly distributions to the limited partners. PDC's stated reason for reducing the distributions was to create a cash reserve to enable each of the Partnerships to further develop its oil and gas reserves. PDC also took the position that unless it acquired sole ownership of the Partnerships' assets, the Partnerships would have insufficient access to capital, by borrowing or otherwise, to fully develop the properties the Partnerships owned. This reduction in distributions was designed to make continued ownership appear unattractive to the limited partners. Furthermore, and contrary to what was represented in the proxy statements, the Partnerships could, in fact, have borrowed or raised funds to enable further

---

[3] In estimating the value of the proven reserves in the proxy statements, PDC used a 15% net present value discount rate for proved developed reserves and 25% for proved undeveloped reserves, which had the effect of lowering the estimated values of those reserves. Ryder Scott's report of summarized in the proxy statements used a 10% discount rate. Ryder Scott's report for PDC 2004-D showed an estimated value of $8,090,000 for the partnership's proved reserves. As alleged above, Ryder Scott was instructed by PDC not to estimate the value of any unproved reserves.

exploitation of the interests owned by the Partnerships. Indeed, cash flow analyses in the hands of PDC, but not disclosed to the limited partners, showed that the Partnerships could self-finance the development of their ownership interests in those reserves. The mergers were approved by a majority of the limited partners of the respective Partnerships at meetings held on December 8, 2010, June 15, 2011, and October 27, 2011. As a result of PDC's false and misleading statements and omissions of material facts in the proxy statements, PDC was able to obtain ownership of all of the Partnerships' valuable assets by paying grossly unfair prices for the class members' limited partnership units.

48.    The Ryder Scott report, which was summarized in a letter included with each of the proxy statements, states: "At PDC's request, this report addresses only the proved reserves attributable to the properties evaluated herein." Thus, Ryder Scott was instructed by PDC to only value each Partnership's "proven" reserves, and the Ryder Scott reports that PDC included in the proxy statements did not account for the value of the Partnerships' interests in the Niobrara formation and their ability to drill infill wells and the increased anticipated cash flow from refracturing each Partnership's existing vertical wells.

49.    In Section 2.2 of each merger agreement, PDC offered to purchase the partnership units of the respective limited partners for an amount it determined to be fair. The prices PDC unilaterally determined to pay for each limited partnership unit was set as follows:

    2003-A Limited Partnership: $8,125;

    2003-B Limited Partnership: $7,864;

    2003-C Limited Partnership: $5,603;

    2003-D Limited Partnership: $5,795;

    2004-A Limited Partnership: $8,400,

    2004-B Limited Partnership: $8,250,

    2004-C Limited Partnership: $5,650,

18

2004-D Limited Partnership: $7,544,

2005-A Limited Partnership: $7,000,

2005-B Limited Partnership: $5,506, and

Rockies Region Private Limited Partnership: $6,603

50.    On December 8, 2010 the limited partners of the 2004 Partnerships (2004-A, Limited Partnership; 2004-B, Limited Partnership; 2004-C, Limited Partnership; and 2004-D, Limited Partnership) voted and a majority approved the proposed amendment and the merger.

51.    On March 25, 2011 the limited partners of the 2005 Partnerships (2005-A, Limited Partnership; 2005-B, Limited Partnership; and Rockies Region Private, Limited Partnership) voted and, again, a majority approved the proposed amendment and merger.

52.    On October 28, 2011 the limited partners of the 2003 Partnerships (2003-A Limited Partnership, 2003-B Limited Partnership, 2003-C Limited Partnership and 2003-D Limited Partnership) voted and, yet again, a majority approved the proposed amendment and merger.

53.    The total amount paid by PDC for the partnership units was approximately $97,000,000. This sum amounts to less than 34 cents on the dollar of the amount invested by the limited partners in the Partnerships, and is far less than the true value of the Partnerships' assets.

54.    As alleged herein, new drilling techniques, including horizontal drilling and hydraulic fracturing (known as "fracking"), made it possible for the Partnerships' operations to extract oil and gas that could not have previously been extracted economically utilizing traditional vertical wells. Horizontal drilling is a technique whereby instead of simply drilling straight down into a reserve, the drill equipment and process can be modified to drill into the same reserve on a horizontal plane, thus increasing and opening up greater access to the oil and gas. Hydraulic fracturing is another more recently employed drilling technology in

19

2071801v1/012711

which water is mixed with sand and chemicals to generate extremely high pressures within certain rock formations resulting in fractures that create access to oil and gas that was previously economically not recoverable by conventional drilling.

55.    As a consequence of the mergers, the limited partners were excluded from obtaining the benefits obtainable by exploiting the newer and more profitable drilling methods, and instead, only the general partner, PDC, will realize these benefits.

56.    Prior to the vote on the amendments and mergers, PDC failed to disclose the value to the Partnerships' assets attributable to the new drilling technologies described above despite its obligation to do so. In fact, PDC's offer to purchase the Partnership units did not value the opportunity to develop the Partnerships' reserves in any meaningful way. Instead, PDC assigned no value to the horizontal wells and an arbitrary value of $10,000 per drilling location for the infill wells, and failed to disclose its own high valuation of these assets.

57.    As alleged above, a recent change in Colorado regulations, which allowed twice as many wells to be drilled on the same amount of land within the Wattenberg field, greatly enhanced the value of the Partnerships' reserves. This was significant and material because the number of wells that can be drilled has a direct positive correlation with the value of reserves. Previously, regulations mandated that there could not be more than one drilling site for every 40 acres in the Wattenberg field. The new regulations allowed a 100% increase in that number.

58.    PDC had in its possession material information that showed that the Partnerships' interests in the Wattenberg field, including the ability to develop horizontal wells in the Niobrara formation and to develop infill wells, were extremely valuable and worth substantially more than $10,000 per drilling location, given the changes in local regulation and the new drilling techniques alleged above.

## FIRST CLAIM FOR RELIEF

### (Against Defendants for Violations of § 14(a) of the
### Securities Exchange Act of 1934 and SEC Rule 14a-9)

59.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

60.     PDC caused the proxy statements to be issued to the limited partners to approve the respective Partnership amendments and merger agreements.

61.     Rule 14a-9, promulgated pursuant to §14(a) of the 1934 Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it was made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein no false or misleading."

62.     The proxy statements at issue in this action were issued in violation of §14(a) of the 1934 Act and Rule 14a-9 because those proxy statement misstated and omitted material facts relating to the fair value of the Partnerships' assets.

63.     In the exercise of reasonable care, defendants should have known that PDC's proxy statements were materially false and misleading.  Plaintiffs, while reserving all of their rights, expressly disclaim and disavow at this time any allegation in this complaint that could be construed as alleging fraud.

64.     By reason of the mergers accomplished by means of the proxy statements, plaintiffs and the members of the Class were injured.

## SECOND CLAIM FOR RELIEF

### (Against Defendants for Breach of Fiduciary Duty)

65.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

66.     Defendant PDC, as the sole general partner of each of the Partnerships, owed fiduciary duties to all of the limited partners in each such Partnership.  In

21

addition, PDC was in possession of material non-public information concerning the true value of the Partnerships' assets, business and future prospects. Thus, there existed an imbalance and disparity of knowledge and economic power between PDC and the limited partners.

67. Defendant PDC breached its fiduciary duties owed to the limited partners of the Partnerships by, among other things, failing to disclose to the limited partners the true value of the Partnerships' assets and providing false or misleading information in the proxy statements regarding the value of those assets. Among other things, defendants:

(a) Failed to disclose that PDC planned to refracture each partnership's existing vertical wells, which was projected by Ryder Scott to generate sufficient additional cash flows for each Partnership that would have permitted each Partnership to both develop horizontal wells in the Niobrara formation and infill wells on the Partnership's leaseholds and continue to make distributions to the limited partners;

(b) Failed to properly value the limited partnership units in light of new drilling techniques, including horizontal drilling and fracking;

(c) Failed to disclose to the limited partners the increase in value of their units due to the new techniques (drilling and fracking);

(d) Failed to properly value limited partnerships units in light of the change in regulations that doubled the number of wells permitted;

(e) Failed to disclose to the limited partners the increase in value of their units due to the change in local regulations that doubled the number of wells permitted;

2071801v1/012711

(f)    Commissioned an appraisal report that failed to take into account the value of the new drilling techniques and change in regulation; and

(g)    Assigned an arbitrary value of $10,000 per well when it had in possession data that showed the Partnerships' assets had much greater value.

68.    By reason of the foregoing common wrongful course of conduct, defendant PDC breached its fiduciary obligations owed to plaintiffs and the other members of the Class. Merger Sub, acting as the instrument of PDC, also breached its fiduciary duties to the limited partners.

69.    As a direct and proximate cause of defendant PDC's wrongful course of conduct, the named plaintiffs and the Class suffered damages, the exact extent of which will be proven at trial, and defendants were unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment, as follows:

A.    Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    Declare that defendants have violated the 1934 Act and breached their fiduciary duties owed to plaintiffs and the Class.

C.    Award damages in favor of plaintiffs and the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon.

D.    Award restitution and equitable relief to plaintiffs and the Class.

E.    Award of punitive damages.

F.    Award plaintiffs and the Class their reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

1    G.    Award such other and further relief as the Court may deem just and

2    proper.

3    Dated:  December 7, 2011                MARC M. SELTZER
                                            SUSMAN GODFREY L.L.P.
4
                                            WILLIAM R.H. MERRILL
5                                           (Texas State Bar No. 24006064)
                                            bmerrill@susmangodfrey.com
6                                           SUSMAN GODFREY L.L.P.
                                            1000 Louisiana Street, Suite 5100
7                                           Houston, TX  77002-5096
                                            Telephone:  (713) 651-9366
8                                           Fax:  (713) 654-6666

9                                           LINDSEY N. GODFREY
                                            (Washington State Bar No. 33566)
10                                          lngodfrey@susmangodfrey.com
                                            SUSMAN GODFREY L.L.P.
11                                          1201 Third Avenue, Suite 3800
                                            Seattle, Washington  98101
12                                          Telephone:  (206) 516-3880
                                            Fax:  (206) 516-3883
13
                                            THOMAS G. FOLEY
14                                          JUSTIN P. KARCZAG
                                            FOLEY BEZEK BEHLE & CURTIS LLP
15
                                            JOHN A. STILLMAN
16                                          GOOD WILDMAN HEGNESS & WALLEY

17

18                                          By _____
                                                   Marc M. Seltzer
19                                          Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2      Pursuant to Fed. R. Civ. P. 38(b), plaintiffs demand trial by jury of all of the

3   claims asserted in this complaint so triable.

4

    Dated:  December 7, 2011              MARC M. SELTZER
5                                         SUSMAN GODFREY L.L.P.

6                                         WILLIAM R.H. MERRILL
                                          (Texas State Bar No. 24006064)
7                                         bmerrill@susmangodfrey.com
                                          SUSMAN GODFREY L.L.P.
8                                         1000 Louisiana Street, Suite 5100
                                          Houston, TX  77002-5096
9                                         Telephone:  (713) 651-9366
                                          Fax:  (713) 654-6666
10
                                          LINDSEY N. GODFREY
11                                        (Washington State Bar No. 33566)
                                          lngodfrey@susmangodfrey.com
12                                        SUSMAN GODFREY L.L.P.
                                          1201 Third Avenue, Suite 3800
13                                        Seattle, Washington  98101
                                          Telephone:  (206) 516-3880
14                                        Fax:  (206) 516-3883

15                                        THOMAS G. FOLEY
                                          JUSTIN P. KARCZAG
16                                        FOLEY BEZEK BEHLE & CURTIS LLP

17                                        JOHN A. STILLMAN
                                          GOOD WILDMAN HEGNESS & WALLEY
18

19
                                          By _____
20                                               Marc M. Seltzer
                                             Attorneys for Plaintiffs
21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1891 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[ ] Western Division** | **[X] Southern Division** | **[ ] Eastern Division** |
| **312 N. Spring St., Rm. G-8** | **411 West Fourth St., Rm. 1-053** | **3470 Twelfth St., Rm. 134** |
| **Los Angeles, CA 90012** | **Santa Ana, CA 92701-4516** | **Riverside, CA 92501** |

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL

Name & Address:
Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel: (310) 789-3100

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JEFFREY SCHULEIN and LINDA SCHULEIN, as
Trustees of the Schulein Family Trust established
[See Attachment for Complete Caption]

PLAINTIFF(S)

v.

PETROLEUM DEVELOPMENT CORPORATION
and 2004 MERGER SUB LLC,

DEFENDANT(S).

CASE NUMBER

SACV11-1891-AG (ANx)

**SUMMONS**

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Marc M. Seltzer _____, whose address is Susman Godfrey L.L.P., 1901 Avenue of the Stars, Ste. 950, Los Angeles, CA 90067 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __DEC - 7 2011__

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                  **SUMMONS**

# ATTACHMENT TO SUMMONS

JEFFREY SCHULEIN and LINDA SCHULEIN, as Trustees of the Schulein Family Trust established March 29, 1989 and governed by agreement dated December 5, 2002; and CHRISTOPHER J. RODENFELS, as Trustee of The Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000, Individually and on Behalf of All Others Similarly Situated,

                  Plaintiffs,

     vs.

PETROLEUM DEVELOPMENT CORPORATION and 2004 MERGER SUB LLC,

                  Defendants.

1

Name & Address:
Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel: (310) 789-3100

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY SCHULEIN and LINDA SCHULEIN, as Trustees of the Schulein Family Trust established [See Attachment for Complete Caption]<br><br>PLAINTIFF(S)<br><br>v.<br><br>PETROLEUM DEVELOPMENT CORPORATION and 2004 MERGER SUB LLC,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV11- 1891- AG (ANx)<br><br><br>**SUMMONS** |

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Marc M. Seltzer_____, whose address is _Susman Godfrey L.L.P., 1901 Avenue of the Stars, Ste. 950, Los Angeles, CA 90067_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:     DEC - 7 2011                          By: _____
                                                      MARILYN DAVIS
                                                      **SEAL**
                                                      Deputy Clerk

                                                      *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

# ATTACHMENT TO SUMMONS

1

2

3   JEFFREY SCHULEIN and LINDA
    SCHULEIN, as Trustees of the Schulein
4   Family Trust established March 29, 1989
    and governed by agreement dated
5   December 5, 2002; and CHRISTOPHER J.
    RODENFELS, as Trustee of The
6   Christopher J. Rodenfels 2000 Revocable
    Trust established May 10, 2000,
7   Individually and on Behalf of All Others
    Similarly Situated,

8                    Plaintiffs,

9           vs.

10  PETROLEUM DEVELOPMENT
    CORPORATION and 2004 MERGER
11  SUB LLC,

12                   Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>JEFFREY SCHULEIN and LINDA SCHULEIN, as Trustees of the Schulein<br>Family Trust established March 29, 1989, etc., et al., | **DEFENDANTS**<br>PETROLEUM DEVELOPMENT CORPORATION and 2004 MERGER SUB<br>LLC |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>Marc M. Seltzer (54534) - mseltzer@susmangodfrey.com<br>SUSMAN GODFREY L.L.P., 1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029;  Tel: (310) 789-3100 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S.
                                    Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship
                                    of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original   ☐ 2 Removed from   ☐ 3 Remanded from   ☐ 4 Reinstated or   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-   ☐ 7 Appeal to District
     Proceeding      State Court         Appellate Court      Reopened                                                                    District   Judge from
                                                                                                                                          Litigation   Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** Amount to be proven at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Proxy Statement Rules under 15 U.S.C. section 78n(a) and SEC Rule 14a-9

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL<br>PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | **BANKRUPTCY** | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | **FORFEITURE /** | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | **PENALTY** | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | **CIVIL RIGHTS** | ☐ 610 Agriculture | Security Act |
| ☑ 850 Securities/Commodities/ | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | **PROPERTY RIGHTS** |
| Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | Injury Product | ☐ 446 American with | ☐ 660 Occupational | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | **IMMIGRATION** | Other | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | ☐ 440 Other Civil | | **FEDERAL TAX SUITS** |
| nation Under Equal | ☐ 240 Torts to Land | Application | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | ☐ 465 Other Immigration | | | USC 7609 |
| | | Actions | | | |

**FOR OFFICE USE ONLY:**   Case Number: _SACV11-1891_

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

COPY

UNITED STATE    ISTRICT COURT, CENTRAL DISTRICT O. CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, California<br>Los Angeles County, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Colorado |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, California<br>Los Angeles County, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date  December 7, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |