MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
DAVIDA P. BROOK (275370)
dbrook@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150

THOMAS G. FOLEY, JR. (65812)
tfoley@foleybezek.com
JUSTIN P. KARCZAG (223764)
jkarczag@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Fax: (805) 962-0722

Attorneys for Plaintiffs

(See Signature Page for Names and Addresses
of Additional Counsel for Plaintiffs)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY SCHULEIN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> PETROLEUM DEVELOPMENT CORPORATION and DP 2004 MERGER SUB LLC, <br><br> Defendants. <br><br> AND RELATED COUNTER CLAIM | Case No. SACV 11-1891 AG(ANx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CERTIFY CLASS** <br><br> **Date:** January 6, 2014 <br> **Time:** 10:00 a.m. <br> **Place:** Courtroom 10-D <br> Hon. Andrew J. Guilford <br><br> Discovery Cut-Off: February 20, 2014 <br> Pre-Trial Conference: May 5, 2014 <br> Trial: May 20, 2014 |

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................1

II.   BACKGROUND ............................................................................2

III.  LEGAL STANDARDS ..................................................................6

IV.  THE PROPOSED CLASS IS ASCERTAINABLE........................8

V.   PLAINTIFFS' PROPOSED CLASS SATISFIES RULE 23(A)...................9

    A.    The Class Is So Numerous That Joinder Is Impracticable...................9

    B.    Numerous Common Issues Exist .....................................10

    C.    Plaintiffs' Claims Are Typical of Other Members of The Class........12

    D.    Plaintiffs and Their Counsel Will Adequately Represent the Class...16

VI.  CLASS TREATMENT IS APPROPRIATE PER RULE 23(b)(3) .............18

    A.    Common Questions of Law and Fact Predominate ...........................18

    B.    A Class Action Is the Superior Method of Adjudication...................23

VII. CONCLUSION ...........................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ................................24

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ..................................................10, 26

*Arthur Young & Co. v. United States District Ct.,*
 549 F.2d 686 (9th Cir. 1976), ...............................................................................7

*Basic Inc. v. Levinson,*
 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ......................................6

*Blackie v. Barrack,*
 524 F.2d 891 (9th Cir. 1975) ..........................................................8, 16, 30, 31

*Butler v. Sears, Roebuck and Co.,*
 727 F.3d 796 (7th Cir. 2013) ..............................................................................30

*Cameron v. E.M. Adams & Co.,*
 547 F.2d 473 (9th Cir. 1976) ..............................................................................14

*Comcast v. Behrend,*
 133 S. Ct. 1426 (2013) ........................................................................................28

*Dofflemyer v. W.F. Hall Printing Co.,*
 558 F. Supp. 372 (D. Del. 1983) .........................................................................29

*Ellis v. Costco Wholesale Corp.,*
 657 F.3d 970 (9th Cir. 2011) ..............................................................................22

*Epstein v. MCA, Inc.,*
 50 F.3d 644 (9th Cir. 1995), ...............................................................................24

*Evans v. IAC/Interactive Corp.,*
 244 F.R.D. 568 (C.D. Cal. 2007) ........................................................................10

*Fifth Moorings Condo., Inc. v. Shere,*
 81 F.R.D. 712 (S.D. Fla. 1979) ...........................................................................32

*Gable v. Land Rover N. Am., Inc.,*
 2011 WL 3563097 (C.D. Cal. July 25, 2011) .......................................................9

*Galvan v. KDI Distrib. Inc.,*
 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ............................................8, 9, 10

*Gould v. American-Hawaiian S.S. Co.,*
 535 F.2d 761 (3d Cir. 1976) ...............................................................................29

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir. 1998) ......................................................................passim

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)..........................................................................17

*Harris v. Palm Spring Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964)............................................................................7

*In re Avon Sec. Litig.*,
   1998 WL 834366 (S.D.N.Y. Nov. 30, 1998)....................................................19

*In re Bank of America Corp., Securities, Derivative, and Employee Retirement Income Sec. Act Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012).......................................................................27

*In re Cavanaguh*,
   406 F.3d 726 (9th Cir. 2002)............................................................................23

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................11, 24, 31

*In re Diamond Foods, Inc., Sec. Litig.*,
   2013 WL 1891382 (N.D. Cal. May 6, 2013) ...................................7, 9, 13, 30

*In re Dynex Capital, Inc. Sec. Litig*,
   2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) .....................................................18

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)............................................................................14

*In re First Am. Corp. ERISA Litig.*,
   258 F.R.D. 610 (C.D. Cal. 2009) ......................................................................9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1993 WL 144861 (S.D. Cal. Feb. 26, 1993) ...................................................25

*In re Heckman Corp. Sec. Litig.*,
   2013 WL 2456104 (D. Del. June 6, 2013).......................................................27

*In re Intel Sec. Litig.*,
   89 F.R.D. 104 (N.D. Cal. 1981) .......................................................................13

*In re Intelcom Group Sec. Litig.*,
   169 F.R.D. 142 (D. Colo. 1996).......................................................................15

*In re Intermec Corp. Sec. Litig.*,
   1991 WL 207370 (W.D. Wash. June 17, 1991)...............................................12

*In re Northrop Grumman Corp. ERISA Litig.*,
   2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000).......................................................................14

*In re THQ, Inc. Sec. Litig.*,
   2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ..................................................7

*In re Unioil Sec. Litig.*,
   107 F.R.D. 615 (C.D. Cal. 1985) .....................................................................20

*In re United Energy Corp. Solar Power Modules Tax Shelter Inves. Sec. Litig.*,
  122 F.R.D. 251 (C.D. Cal. 1988) ..................................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ........................................................................32

*In Re Vivendi Universal S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2012)....................................................................18

*In Re Wash. Mut. Mortgage-Backed Sec. Litig.*,
  276 F.R.D. 658 (W.D. Wash. Oct. 21, 2011)..........................................16, 18

*J. I. Case Co. v. Borak*,
  377 U.S. 426, 84 S. Ct. 1555, 12 L. Ed. 2d (1964) ....................................6, 19

*Joint Equity Comm. Of Investors of Real Estate Partners, Inc. v. Coldwell Banker
  Real Estate Corp.*,
  281 F.R.D. 422 (C.D. Cal. 2012) ..................................................................28

*Jordan v. Cnty. of L.A.*,
  669 F.2d 1311(9th Cir. 1982) (certifying classes with thirty-nine, sixty-four,
  and seventy-one people),...............................................................................13

*Katz v. China Century Dragon Media, Inc.*,
  287 F.R.D. 575 (C.D. Cal. Dec. 18, 2012)....................................................16

*Koppel v. 4982 Corp.*,
  191 F.R.D. 360 (S.D.N.Y. 2000)...................................................................27

*Lowery v. City of Albuquerque*,
  273 F.R.D. 668, 678 (D.N.M. 2011) .............................................................12

*Mills v. Electric Auto Lite Co.*,
  396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) .......................4, 5, 25, 26

*Osofsky v. Zipf*,
  645 F.2d 107 (2d Cir. 1981).....................................................................21, 29

*Pellman v. Cinerama, Inc.*,
  89 F.R.D. 386 (S.D.N.Y. 1981)................................................................15, 27

*Plaine v. McCabe*,
  797 F.2d 713 (9th Cir. 1986).........................................................................29

*Porter v. Texas Commerce Bancshares, Inc.*,
  1989 WL 120358............................................................................................26

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ..........................................................................12

*Schneider v. Traweek*,
  1990 WL 132716 (C.D. Cal. July 31, 1990) ..............................................8, 20

*Scholes v. Stone, McGuire & Benjamin*,
  143 F.R.D. 181 (N.D. Ill. 1992) ....................................................................32

iv

*Selk v. St. Paul Ammonia Prods., Inc.*,
   597 F.2d 635 (8th Cir. 1979)..................................................................26

*Stahl v. Gibralter Fin. Corp.*,
   967 F.2d 335 (9th Cir. 1992)............................................................19, 25

*TSC Indus. v. Northway*,
   426 U.S. 438, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976) ....................25

*Vinh Nguyen v. Radient Pharmaceuticals Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012) ...............................................passim

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ......................................................................9, 10

*Yamamoto v. Omiya*,
   564 F.2d 1319 (9th Cir. 1977) ..............................................................9

*Yamner v. Boich*,
   1994 WL 514035 (N.D. Cal. Sept. 15, 1994).......................................7

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180(9th Cir. 2000),................................................................8

**Statutes**
15 U.S.C. § 78n(a) .........................................................................................5

**Rules**
Fed. R. Civ. P. 23(a) and (b)(3) ................................................................1

Fed. R. Civ. P. 23(a)(3) .............................................................................12

Rule 23.................................................................................................passim

Rule 23(a) ...........................................................................................8, 18

Rule 23(a)(1)........................................................................................9, 10

Rule 23(a)(2)......................................................................................10, 12

Rule 23(a)(4).............................................................................................16

Rule 23(b) ..................................................................................................18

Rule 23(b)(3) ....................................................................................passim

Rule 23(b)(a)(1) ........................................................................................10

**Other Authorities**
3 William B. Rubenstein, Newberg on Class Actions, §7:29 (5th ed. 2013)..........15

1    **I.    <u>INTRODUCTION</u>**

2        The Court-appointed Lead Plaintiffs and the ten additional named plaintiffs[1]

3    respectfully move this Court for an order pursuant to Fed. R. Civ. P. 23(a) and

4    (b)(3) certifying a class (the "Class") comprised of:

5        All persons and entities who owned limited partnership units in one or more

6    of the following limited partnerships (the "Partnerships") who were cashed out of

7    their limited partnerships units pursuant to merger transactions with defendant DP

8    2004 Merger Sub LLC ("Merger Sub"):

9        •    PDC 2002-D Limited Partnership,

10       •    PDC 2003-A Limited Partnership,

11       •    PDC 2003-B Limited Partnership,

12       •    PDC 2003-C Limited Partnership,

13       •    PDC 2003-D Limited Partnership,

14       •    PDC 2004-A Limited Partnership,

15       •    PDC 2004-B Limited Partnership,

16       •    PDC 2004-C Limited Partnership,

17       •    PDC 2004-D Limited Partnership,

18       •    PDC 2005-A Limited Partnership,

19       •    PDC 2005-B Limited Partnership, and

20

21   _____

[1] On March 19, 2012, the Court appointed Christopher J. Rodenfels, as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust, and Jeffrey and Linda Schulein, as Trustees of the Schulein Family Trust, as Lead Plaintiffs.  (Doc. No. 25)  With the filing of the First Amended Complaint ("FAC") on August 31, 2012, ten additional limited partners joined the action as plaintiffs.   The additional plaintiffs are Robert H. Barr and Jane S. Barr, as Trustees for the Robert H. and Jane Barr Trust dated February 1, 2003; Christine L. Cox, as Trustee for the Christine L. Cox Trust dated December 15, 2003; Clay A. Cox, as Trustee for the Clay A. Cox Trust dated December 15, 2003; Matthew S. Goldsmith and Katherine M. Goldsmith, as Trustees of the Matthew Shawn Goldsmith and Katherine Mary Goldsmith Living Trust dated May 10, 2007; Timothy McDonald, an Individual; William J. McDonald and Judith A. McDonald, as Trustees of the William J. and Judith A. McDonald Living Trust dated April 16, 1991; and William J. Wieseler, as Trustee for the William J. Wieseler Trust dated September 9, 2002.   All plaintiffs seek to be appointed as class representatives.

1          •      Rockies Region Private Limited Partnership.[2]

2          Each of the Partnerships was formed by defendant Petroleum Development

3    Corporation ("PDC"), which acted as the Partnerships' sole general partner.  Each

4    partnership was acquired by PDC through a merger into its newly-formed, wholly-

5    owned subsidiary, Merger Sub accomplished by means of virtually identical proxy

6    statements issued to the limited partners who comprise the Class.  Because each of

7    the proxy statements made essentially the same alleged misrepresentations and

8    omissions about the true value of the Partnerships' assets, and because individual

9    reliance is not an element of the claims asserted on behalf of the Class, this case is

10   ideally suited for class treatment and readily satisfies the requirements of Rule 23.

## II.      BACKGROUND

12         Defendant PDC, a public company, owns, operates, and manages oil and

13   natural gas properties in Colorado, Texas and West Virginia.  FAC at ¶ 2.  During

14   2002 to 2005, PDC formed the Partnerships to raise funds to finance the

15   acquisition and development of such properties, primarily in Colorado, and

16   attracted thousands of investors who paid hundreds of millions of dollars for their

17   limited partnership interests.  *Id.* & ¶ 27.  These investors' funds enabled PDC to

18   acquire and develop the Partnerships' properties.  *Id.*, ¶ 27.

19         But when new drilling technologies and local regulatory developments

20   greatly enhanced the value of the Partnerships' assets, PDC decided to buy out the

21   Class members interests and exploit the Partnerships' assets for its own benefit.  *Id.*

22   & ¶¶ 37-38, 61, 64.  To that end, PDC conceived and initiated a plan to take the

23   Partnerships private by the end of 2012, by means of mergers to be accomplished

24   through the use of virtually identical proxy statement.  *Id.*, ¶ 2.  PDC's strategic

25   plan was well-documented internally by presentations that clearly show that the

26   Partnership buybacks were part and parcel of a common plan and scheme designed

27   ───────────────
[2] Excluded from the Class are defendants and their directors, officers, employees, and agents.

28

to allow PDC to capture the value of the Partnerships' assets for itself. *See* Declaration of Marc M. Seltzer, dated October 15, 2013 ("Seltzer Decl."), Exhibits 15–17. For example:

- A May 29, 2009 PDC presentation to its board of directors, titled "Defining A Value Maximizing Plan, Draft Discussion Document, 2009 Board and ELT Planning Meeting" states:
  - o  "Critical Findings … PDC encounters significant risk if it does not pursue a strategic reconfiguration of its drilling inventory . . . This can begin with development of Marcellus, pursuing scale in the Rockies, acquiring existing PDC Partnerships . . ." (Seltzer Decl., Ex. 15 at PDC846206); and
  - o  "Asset Reconfiguration Options Considered - 1. Purchase partnerships" (*id.* at PDC846242); and
  - o  "Purchase Partnership Considerations.  Timing of SEC Compliance – 2005 & 2004 partnerships by September 2009" (*id.* at PDC846244).
- A presentation for PDC's Planning and Finance Committee from May 13, 2010 states:
  - o  "Partnership Plan … Buy 7 in 2010, 10 in 2011 & develop our 20% interest in the remaining 11 – 2011 Plan depends on the success of 2010" (Seltzer Decl, Ex. 16 at PDC431369);  and
  - o  "Partnerships: 3 year Buyback Plan" showing that the 2004 Partnerships would be purchased in 2010 and the 2003 and 2005 Partnerships would be purchased in 2011 (*id.* at PDC431377).
- A July 15, 2010 PDC presentation titled "Analyst Day – Colorado" states:
  - o  "Partnership Purchases – Three year Plan to Acquire . . . Limited Partners' non-operated interest is typically 60-80% of certain PDC operated wells (Rockies principally) . . . 28 Limited Partnerships have net reserves of approximately 125 Bcfe . . . PDC strategy to purchase

Limited Partners interest over next three years" (Seltzer Decl. Ex. 17 at PDC701681).

Because the Partnerships' limited partnership units were registered with the SEC, PDC could accomplish its strategy to freeze out the limited partners only by soliciting and obtaining their approval of the mergers by means of proxy statements that complied with section 14 of the Securities Exchange Act of 1934 (the "1934 Act"). FAC ¶ 5. The proxy statements were thus an "essential link" in the accomplishment of the scheme. *See Mills v. Electric Auto Lite Co.,* 396 U.S. 375, 385, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970).

Each of the proxy statements included nearly identical misrepresentations and omissions concerning the value of the Partnerships' assets, the Partnerships' ability to borrow funds to finance their operations, and PDC's plans to exploit the Partnerships' assets for its own benefit after the buybacks took place.[3]   Among other things, the proxy statements:

- Failed to disclose that PDC planned to refracture each Partnership's existing vertical wells, which was projected by PDC's petroleum engineering firm, Ryder Scott, to generate sufficient additional cash flows to allow each Partnership to develop both horizontal wells in the Niobrara formation and infill wells on the Partnership's leaseholds and continue to make distributions to the limited partners;

- Failed to properly value the limited partnership units in light of the availability of new drilling techniques, including horizontal drilling and fracking;

- Failed to properly value limited partnerships units in light of the change in regulations that doubled the number of wells permitted in the acreage where Partnerships' wells had been drilled;

---

[3] Copies of PDC's proxy statements are attached as Exhibits 1 to 12 to the Seltzer Decl.

- Commissioned an appraisal report that failed to take into account the value of the new drilling techniques and favorable changes in drilling regulations; and

- Assigned an arbitrary value of $10,000 per infill well when PDC had in its possession data that showed the Partnerships' assets had much greater potential value.

FAC at ¶¶ 50, 63, 74.

These misrepresentations and omissions are at the core of Plaintiffs' claims that the proxy statements were materially false and misleading. After issuance of the proxy statements, the limited partners of all twelve Partnerships voted to approve the buyouts, each of the Partnerships were merged into defendant Merger Sub, and the limited partners were cashed out of the Partnerships at unfairly low prices.

The named plaintiffs invested in one or more of the Partnerships and collectively owned interests in all of the Partnerships. *See* Plaintiff Certifications, Seltzer Decl., Ex. 14. In addition to appearing for depositions and answering defendants' interrogatories, plaintiffs have filed a certifications declaring that they did not purchase their units in order to participate in a lawsuit, they have reviewed the complaint, are willing to serve in as class representatives, and will not accept payment other than their *pro rata* share of any recovery, except as ordered or approved by the Court. Seltzer Decl., ¶ 5, Ex. 14.

Section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.A. 240 § 14a-9, require full and fair disclosure of all material facts in proxy statements for any management-submitted proposals, like the mergers at issue in this action, to be subject to a vote of investors. Further, as the sole managing general partner of each of the Partnerships, PDC had a fiduciary duty to deal fairly with the limited partners and a duty of candor to fully and fairly disclose to the limited partners all material information known by PDC about the value of the

1  Partnerships' assets and the disadvantages to the limited partners of the merger

2  transactions.  Despite these obligations, PDC failed to disclose material

3  information about the true value of the Partnerships' assets and took advantage of

4  the limited partners so that it could buy out their interests at grossly unfair prices.

5  **III.  LEGAL STANDARDS**

6      The Supreme Court has long recognized that private securities actions are an

7  important enforcement mechanism to supplement government administrative

8  regulation of the securities markets.  "Private enforcement . . . provides a necessary

9  supplement to [Securities and Exchange] Commission action," by both affording

10  relief to those injured by securities laws violations and serving as a deterrent to

11  future wrongdoing.  *J. I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S. Ct. 1555, 12

12  L. Ed. 2d (1964); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S. Ct.

13  978, 99 L. Ed. 2d 194 (1988) (noting that a private action for violation of the 1934

14  Act "constitutes an essential tool for enforcement of the 1934 Act's

15  requirements").

16      Accordingly, numerous courts within this Circuit have repeatedly endorsed

17  the use of class action procedures to resolve claims brought under federal securities

18  laws.  *See, e.g.*, *In re Diamond Foods, Inc., Sec. Litig.*, 2013 WL 1891382 (N.D.

19  Cal. May 6, 2013) (certifying securities class action); *Vinh Nguyen v. Radient

20  Pharmaceuticals Corp.*, 287 F.R.D. 563 (C.D. Cal. 2012) (certifying securities

21  class action); *In re THQ, Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar.

22  22, 2002) (certifying securities class action and finding that "[t]he Ninth Circuit

23  has noted that class actions have proved useful 'where a large number of

24  purchasers or holders of securities claim to have been defrauded by a common

25  course of dealing on the part of defendants'") (quoting *Harris v. Palm Spring

26  Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)); *Yamner v. Boich*, 1994

27  WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) (certifying securities class action and

28  finding "[t]he Ninth Circuit favors a liberal use of class actions to enforce federal

securities laws" (citing *Arthur Young & Co. v. United States District Ct.*, 549 F.2d 686 (9th Cir. 1976), *cert denied*, 434 U.S. 829 (1977));  *Schneider v. Traweek*, 1990 WL 132716, at *6 (C.D. Cal. July 31, 1990) (certifying securities class action and finding "the law in the Ninth Circuit is well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws") (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied,* 429 U.S. 616 (1976)); *see also Blackie*, 524 F.2d at 903 (explaining that the availability of the class action to redress frauds perpetrated on numerous persons by the use of similar misrepresentations has been "consistently upheld").

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied.  *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2000), *amended*, 273 F.3d 1266 (9th Cir. 2001).  "While the Court's analysis must be rigorous, Rule 23 confers to the district court 'broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceeding before the court.'"  *Galvan v. KDI Distrib. Inc.*, 2011 WL 5116585, at *3 (C.D. Cal. Oct. 25, 2011); *see also Vinh Nguyen*, 287 F.R.D. at 569 ("The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion.") (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)).

Although plaintiffs must offer facts sufficient to satisfy the Rule 23 requirements, *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 616 (C.D. Cal. 2009), the Court "need only form a 'reasonable judgment' on each certification requirement," taking the complaint's allegations as true and declining to make merits determinations.  *Galvan*, 2011 WL 5116585, at *3 (quoting *Gable v. Land Rover N. Am., Inc.*, 2011 WL 3563097, at *3 (C.D. Cal. July 25, 2011)).  In other words, "[i]n determining whether class certification is appropriate, 'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail

1    on the merits, but rather, whether the requirements of Rule 23 are met.'" *Diamond*

2    *Foods Sec. Litig.*, 2013 WL 1891382, at *3.  A court's analysis may entail some

3    overlap with the merits of plaintiffs' underlying claim, *see id.* (citing *Wal-Mart*

4    *Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)), "however, '[m]erits questions

5    may be considered to the extent—but only to the extent—that they are relevant to

6    determining whether the Rule 23 perquisites for class certification are satisfied."

7    *Id.* at *3 (citing *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184,

8    1194-95, 185 L. Ed. 2d 308 (2013)).

9        Here, there should be no doubt as to the propriety of class treatment.  As

10   demonstrated below, the class satisfies the Rule 23(a) elements of numerosity,

11   commonality, typicality, and adequacy of representation, as well as the Rule

12   23(b)(3) predominance and superiority requirements.

13   **IV.    THE PROPOSED CLASS IS ASCERTAINABLE**

14       Although not specified in Rule 23, courts have held that it is a prerequisite

15   that the proposed class be ascertainable.  *Galvan*, 2011 WL 5116585, at *3.  "A

16   class definition should be precise, objective, and presently ascertainable." *Evans v.*

17   *IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007) (internal quotations

18   omitted).  Ascertainability is satisfied when it is "administratively feasible for the

19   court to determine whether a particular individual is a member." *In re Northrop*

20   *Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *7 n.61 (C.D. Cal. Mar. 29,

21   2011) (internal quotation omitted).

22       Here, the class definition utilizes objective criteria that make class

23   membership readily verifiable.  The identity of the persons and entities who owned

24   partnership units in one or more of the twelve related limited partnerships included

25   in the proposed class is easily obtained from records regularly maintained as part

26   of defendants' normal course of business.  Indeed, defendants have produced

27   records identifying the limited partners who voted on the mergers at the center of

28

1  this lawsuit.  Seltzer Decl., Ex. 13.  Accordingly, the ascertainability requirement

2  is easily met here.

3  **V.    PLAINTIFFS' PROPOSED CLASS SATISFIES RULE 23(A)**

4       **A.    The Class Is So Numerous That Joinder Is Impracticable**

5       Rule 23(a)(1) requires that the proposed class be "so numerous that joinder

6  of all members is impracticable."  *Vinh Nguyen*, 287 F.R.D. at 568 (citing Fed. R.

7  Civ. P. 23(a)(1)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.

8  1998).  There is no specific minimum number of plaintiffs needed to qualify for

9  class treatment, but a proposed class of at least forty members presumptively

10 satisfies the numerosity requirement.  *In re Cooper Cos. Inc. Sec. Litig.*, 254

11 F.R.D. 628, 634 (C.D. Cal. 2009) (citing 1 *Newberg On Class Actions 2d*, § 3.05

12 (1985 ed.).  Moreover, "'where the exact size of the proposed class is unknown,

13 but general knowledge and common sense indicate it is large, the numerosity

14 requirement is satisfied.'"  *Vinh Nguyen*, 287 F.R.D. at 569 (quoting *In re Intermec*

15 *Corp. Sec. Litig.*, 1991 WL 207370, at *2) (W.D. Wash. June 17, 1991).

16 "Satisfaction of the numerosity requirement does not require that joinder is

17 impossible, but only that plaintiff will suffer a strong litigational hardship or

18 inconvenience if joinder is required."  *Lowery v. City of Albuquerque*, 273 F.R.D.

19 668, 678 (D.N.M. 2011); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.

20 1993) (emphasizing that for purposes of joinder, "[i]mpracticable does not mean

21 impossible").

22      In this case, the proposed class is "so numerous that joinder of all members

23 is impracticable."  In their motion to dismiss, defendants admited that at least

24 "10,868 persons and entities invested in the Partnerships."  Doc. No. 10-1 at 8.

25 The proxy statements state that each partnership had hundreds of members, and

26 some partnerships had well over a thousand limited partners.  Seltzer Decl. at ¶ 3.

27 PDC's list of class members that voted in response to the proxies runs well over

28 200 pages.  Seltzer Decl., Ex. 13.

Joinder of such thousands of persons is impracticable, and numerous courts have found Rule 23(b)(a)(1) satisfied by allegations implicating far fewer proposed class members. *See In re United Energy Corp. Solar Power Modules Tax Shelter Inves. Sec. Litig.*, 122 F.R.D. 251, 253 (C.D. Cal. 1988) (certifying 300-member subclass in a securities action); *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (certifying classes with thirty-nine, sixty-four, and seventy-one people), *vacated on other grounds*, 459 U.S. 810 (1982); *In re Intel Sec. Litig.*, 89 F.R.D. 104, 111-112 (N.D. Cal. 1981) (finding numerosity met for classes with 104 and 114 people in a securities action). Rule 23(a)(1)'s numerosity requirement is thus satisfied here.

## B.    Numerous Common Issues Exist

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." *Diamond Foods Sec. Litig.*, 2013 WL 1891382, at *4 (citing Fed. R. Civ. P. 23(a)(2)). The Ninth Circuit construes the commonality requirement "permissively" and does not require all questions of fact and law to be common. *Id.* at *4 ("Rule 23(a)(2) does not require that each member in a class have identical factual and legal issues surrounding his or her claim. 'The existence of shared legal issues with divergent factual predicates is sufficient' to meet the requirements of Rule 23(a)(2).") (*citing Hanlon*, 150 F.3d at 1019)). Instead, a single common question is sufficient to satisfy the commonality requirement. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006) (affirming class treatment in fraud case, notwithstanding non-identical misrepresentations, where sales agents used a "standardized protocol"). Any defense that might be asserted does not destroy commonality. *See, e.g., Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (holding that individual statute of limitations defenses did not defeat predominance of common issues).

The commonality requirement has been applied permissively in securities fraud litigation. "Securities cases often involve allegations of common courses of

1    fraudulent conduct, which can be sufficient to satisfy the commonality
2    requirement."  5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.23[4][b],
3    at 23-76-77 (3d ed. 2013).  Indeed, "[w]here the facts as alleged show that
4    defendants' course of conduct concealed material information from an entire
5    putative class, the commonality requirement is met."  *In re Oxford Health Plans,*
6    *Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

7          These considerations apply with full force in the instant case.  As detailed
8    above, plaintiffs allege that defendants engaged in a uniform course of conduct
9    with respect to the dissemination of virtually identical false and misleading proxy
10   statements to all of the limited partners and caused the same type of harm to all
11   members of the Class and for which the same relief is sought.  *Pellman v.*
12   *Cinerama, Inc.*, 89 F.R.D. 386, 389 (S.D.N.Y. 1981) (finding it significant for
13   purposes of commonality that plaintiffs' §14(a) "claims turn upon one document
14   sent to all shareholders, rather than upon a multiplicity of acts or
15   communications").  In this regard, the FAC sketches "a common scheme affecting
16   the entire class which is the hallmark" of certified securities actions.  *In re*
17   *Intelcom Group Sec. Litig.*, 169 F.R.D. 142, 148 (D. Colo. 1996).  Indeed, the FAC
18   sets forth multiple questions of law and fact that are common to the members of
19   the Class.  These common questions include, among others:

20         (a)   whether the value of the Partnerships' oil and gas reserves was
21               understated in the proxy statements;

22         (b)   whether the proxy statements misrepresented or omitted material facts
23               about the value of the oil and gas reserves in which the Partnerships
24               owned an interest;

25         (c)   whether defendants breached their fiduciary duties of loyalty and
26               candor;

27         (d)   the extent to which the members of the Class sustained damages;

28         (e)   the proper measure of damages under federal and state law; and

1   (f) whether plaintiffs are entitled to disgorgement of defendants' gains

2     realized through their breaches of duties to the Class.

3    Numerous courts have found that similar groupings of common questions

4 satisfy Rule 23(a)(2). *See, e.g.*, *Katz v. China Century Dragon Media, Inc.*, 287

5 F.R.D. 575, 585 (C.D. Cal. Dec. 18, 2012) (certifying securities class where

6 material common questions included: "whether there were false statements or

7 material omissions in [a] registration statement and prospectus"); *Vinh Nugyen*,

8 287 F.R.D. at 569 (certifying securities class action and finding that "[i]n an action

9 alleging misrepresentations reported by a company, the Ninth Circuit has noted

10 that '[c]onfronted with a class of purchasers allegedly defrauded over a period of

11 time by similar misrepresentations, courts have taken the common sense approach

12 that the class is united by a common interest in determining whether a defendant's

13 course of conduct is in its broad outlines actionable, which is not defeated by slight

14 differences in class members' positions, and that the issue may be profitably be

15 tried in on one suit.'") (quoting *Blackie*, 524 F.2d at 902); *In Re Wash. Mut.*

16 *Mortgage-Backed Sec. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (certifying

17 securities class where plaintiffs demonstrated that the common legal question that

18 bound the class together was whether the "offering documents contain[ed]

19 material, false or misleading statements as to the existence or quality of

20 underwriting guidelines that caused them harm"). Rule 23(a)(2)'s commonality

21 requirement is thus established here.

22   **C.** **Plaintiffs' Claims Are Typical of Other Members of The Class**

23    Rule 23(a)(2) requires that "the claims or defenses of the representative

24 parties are typical of the claims or defenses of the class." *Vinh Nugyen*, 287 F.R.D.

25 at 569 (citing Fed. R. Civ. P. 23(a)(3)). The purpose of the typicality requirement

26 "'is to assure that the interest of the named representative aligns with the interests

27 of class.'" *Vinh Nugyen*, 287 F.R.D. at 569-70 (quoting *Hanon v. Dataproducts*

28 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Plaintiffs' claims are typical if they

1    "are reasonably co-extensive with those of absent class members; they need not be

2    substantially identical." *Hanlon*, 150 F.3d at 1020.

3         Here, plaintiffs' claims are typical of the proposed Class because just like all

4    other Class members:

5       (1) Plaintiffs owned limited partnership units that were subject to cash-out

6           merger transactions into the same PDC subsidiary, which were effectuated

7           pursuant to virtually identical proxy statements as part of a common scheme

8           and plan of defendants;

9       (2) Plaintiffs held those interests at the time the proxy statements were issued

10          and when the mergers took place;

11      (3) Plaintiffs' claims are based on essentially the same misrepresentations and

12          omissions in the proxy statements; and

13      (4) Plaintiffs were underpaid for their partnership interests, and thus suffered

14          similar losses.

15        Accordingly, plaintiffs' claims satisfy the typicality requirement because

16   they share the same legal theory as all other class members, their claims are based

17   on the same common course of conduct as all other Class members, their injury is

18   the same as all other Class members, and there are no known individualized

19   defenses applicable only to them.

20        As would be expected, numerous cases have found typicality present in

21   cases similar to this action. *See, e.g.*, *In Re Wash. Mut.*, 276 F.R.D. at 666 (finding

22   typicality where "[t]he resolution of the Plaintiffs' claims and the Class's will

23   require an examination of the same alleged statements and whatever proof

24   Plaintiffs adduce to show the statements or omissions were false or misleading and

25   material"); *see also In Re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 85

26   (S.D.N.Y. 2012) ("Plaintiffs will necessarily seek to develop facts relating to . . .

27   dissemination of allegedly false or misleading statements . . . .  Such allegations

28   . . . generally . . . satisfy the typicality requirement."); *In re Dynex Capital, Inc.*

*Sec. Litig*, 2011 WL 781215, at \*3 (S.D.N.Y. Mar. 7, 2011) (finding claims were typical because legal theories and proof would be the same for plaintiffs' claims and claims of class members).

Defendants may argue that differences in the individual plaintiffs' knowledge of the transactions, sophistication, and way they voted their proxies undermine commonality and typicality. For example, plaintiff Rodenfels protested the unfairness of mergers. The Ninth Circuit has rejected such arguments in Section 14 cases. In *Stahl v. Gibralter Fin. Corp.*, 967 F.2d 335 (9th Cir. 1992), the plaintiff believed the defendant's proxy statement was deceptive, sought to block the merger by means of an injunction, and voted against the merger when the injunction was denied. The Ninth Circuit ruled that the plaintiff nonetheless had standing to sue because "we take the Supreme Court's consideration of Sandberg's section 14(a) action to mean that a plaintiff may bring a direct action after the complained-of proxy vote even where he has not himself relied on the challenged misstatements." *Id.* at 338. The reason for the holding was two-fold: (1) "as materiality is an objective standard, it should not matter whether any particular shareholder was actually misled," and (2) "because 'the purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive of inadequate disclosure in proxy solicitation,' those shareholders who recognize the deception should be able to sue." *Id.* at 337 (quoting *J.I. Case Co.*, 377 U.S. at 431). Many courts have held that the sophistication of an investor is irrelevant to the typicality of his claims, especially where individual reliance is not an element of the claims. *See e.g., In re Avon Sec. Litig.*, 1998 WL 834366, \*8 (S.D.N.Y. Nov. 30, 1998) ("A plaintiff's sophistication as an investor generally is irrelevant to whether or not his claims are typical of the class where subjective reliance is not an issue in the case.").

Defendants may also argue that a single class in inappropriate because each partnership held different mineral leases in Colorado. But case law supports a

single class for all twelve Partnerships without any need for subclasses.  Subclasses may be certified where conflicts of interest exist among class members or where subclasses are useful as an administrative tool for case management tool.  *See generally* 3 William B. Rubenstein, Newberg on Class Actions, §7:29 (5th ed. 2013).  Because there are no apparent conflicts among class members, subclasses do not appear to be a necessary or useful tool at this juncture of the litigation.  The Court, however, retains jurisdiction to establish subclasses, should they appear to be necessary or useful at a later stage of the proceeding.  *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622 (C.D. Cal. 1985) ("Conflicts which arise later can be solved by grouping class members into subclasses or bifurcating trial of the damages issues").  *Schneider v. Traweek*, 1990 WL 132716 (C.D. Cal. July 31, 1990), is on point.  In *Traweek*, the defendants solicited investors in eight separate partnerships using eight different prospectuses.  The court determined that subclasses were unnecessary and certified a single "global" class of investors in all eight partnerships because each prospectus included similar misrepresentations about the financial condition of the partnerships' general partner.  Commonality and typicality were present despite the differences in the partnerships assets:

> The fact that the named Plaintiffs purchased different types of securities, either limited partnership units or promissory notes, at different times from different limited partnerships does not destroy the "typicality" of their claims . . . all of the named Plaintiffs and the purported class members they represent were injured by the Defendants' common course of conduct of making the Traweek "empire" appear financially stable and successful in the prospectuses, when in fact it was on the verge of collapse.

*Id.* at *9.[4]

---

[4] The Court noted that if it found subclasses to be useful, it would likely certify them at a later stage in the litigation.

1    The logic of *Traweek* applies even more strongly in this case, where the
2    Class members limited partnership units are all of the same type, the buybacks
3    were part of a common plan and scheme, and the proxy statements are virtual
4    cookie-cutter copies containing nearly identical misrepresentation and omissions,
5    and differing only to the extent each Partnership held their own mineral leases.

6    The same is true for plaintiffs' damages, which are straightforward and
7    require no individualized modeling.  Each Class member was damaged by the
8    difference between the price paid for his or her partnership units and the fair value
9    of those partnership units.  The fair value will be determined for each Partnership
10   with no requirement to separately value each Partnership unit because that
11   valuation will apply across the board and apply in a mechanical fashion to the
12   number of units held by each Class member.  Alternatively, the Class is entitled to
13   recovery of the amount of the gain obtained by defendants as reflected in the
14   current value of the assets formerly held by the Partnerships.  *See, e.g.*, *Osofsky v.*
15   *Zipf*, 645 F.2d 107, 111, 113-14 (2d Cir. 1981) (holding that actual damages in a
16   section 14(a) case may include loss of possible profit, unless wholly speculative,
17   from securing a merger agreement more favorable to plaintiff).  Those gains would
18   also be distributed on a *pro* rata basis to each Class member based on the number
19   of units held by him or her.  In either event, the proof would be common to the
20   Class, because the measures of recovery will be applicable on a class-wide basis.

21   **D.    Plaintiffs and Their Counsel Will Adequately Represent the Class**

22   Rule 23(a)(4) requires that the representative parties fairly and adequately
23   protect the interests of the class.  *Vinh Nugyen*, 287 F.R.D. at 570 (citing Fed. R.
24   Civ. P. 23(a)(4)).  The relevant inquiries are: "(1) do the named plaintiffs and their
25   counsel have any conflicts of interest with other class members and (2) will the
26   named plaintiffs and their counsel prosecute the action vigorously on behalf of the
27   class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)
28   (quoting *Hanlon*, 150 F.3d at 1020).

As this Court has already held with respect to the Lead Plaintiffs, *see* Doc. Nos. 25 & 26, plaintiffs satisfy both prongs of the adequacy requirement. First, none of the plaintiffs has any known conflicts with other Class members. To the contrary, the plaintiffs have the same interest as all Class members in recovering the true value of the Partnership assets that were improperly obtained by PDC.

Second, as set forth in their original certifications and by their actions to date, plaintiffs have already shown they will vigorously prosecute the interests of the Class through their chosen counsel. Plaintiffs have, among other things, filed an amended complaint, answered interrogatories, sat for depositions, successfully defended the claims asserted on behalf of Class by defeating defendants' motions to dismiss and for a stay, and engaged in vigorous discovery efforts, including litigating a contested motion to compel documents in proceedings before the Magistrate Judge assigned to this case. Seltzer Decl. ¶ 5.

Plaintiffs' adequacy is also demonstrated by their choice of experienced counsel to represent them and the Class in this action. *See In re Cavanaugh*, 406 F.3d 726, 732-33 (9th Cir. 2002) (presumptive lead plaintiffs' choice of experienced counsel can demonstrate adequacy to serve as lead plaintiff). There should be little question that the plaintiffs selected experienced counsel to prosecute this action. The plaintiffs' chosen counsel – Marc M. Seltzer of Susman Godfrey L.L.P., Thomas G. Foley, Jr. of Foley Bezek Behle & Curtis L.L.P., and John A. Stillman of Good Wildman Hegness & Walley – were appointed Lead Counsel by the Court and have a long history of handling complex litigation. *See* Order Appointing Lead Plaintiffs and Class Counsel, dated March 19, 2012, Doc. No. 25. Given their experience in litigating class action and other complex litigation, coupled with their zealous prosecution of plaintiffs' claims to date, there can be no question that they are adequate to continue serving as class counsel. *See* the firm and individual resumes and information filed in support of appointment as Lead Counsel, Doc. Nos. 15, 16, and 17.

8 Case 8:11-cv-01891-AG-AN   Document 74   Filed 10/15/13   Page 24 of 31   Page ID #:2307

## VI.   CLASS TREATMENT IS APPROPRIATE PER RULE 23(B)(3)

Once the requirements of Rule 23(a) are satisfied, the proposed class must satisfy at least one subpart of Rule 23(b), "which is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed.1986)).   Certification is requested pursuant to Rule 23(b)(3), which requires: (1) that common questions of law or fact predominate over individual questions, and (2) that the class action provides a superior method for adjudicating the controversy.

### A.   Common Questions of Law and Fact Predominate

The first issue in the Rule 23(b)(3) analysis is whether common questions of fact or law predominate over individual questions.  The thrust of the predominance inquiry is "whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

In *Amchem,* the Supreme Court specifically noted that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud. . . ." *Amchem*, 521 U.S. at 625.   Courts in this Circuit have repeatedly held that securities class actions "fit Rule 23 'like a glove.'" *Cooper Cos. Sec. Litig.*, 254 F.R.D. at 632 (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367 (1996)); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1993 WL 144861, at *6 (S.D. Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct.").

Determining predominance requires consideration of the elements of underlying causes of action.   In this case, the proposed Class is highly cohesive

2906448v1/012711 18

1    and easily satisfies the predominance test because the proof needed for each

2    element of all the plaintiffs' claims is the same and there are few, if any, individual

3    issues.

4         The elements of a § 14 and Rule 14a-9 claim are a material

5    misrepresentation in a proxy, where the proxy is an essential link in the transaction.

6    *See Mills,* 396 U.S. at 385 ("Where there has been a finding of materiality, a

7    shareholder has made a sufficient showing of causal relationship between the

8    violation and the injury . . . if, as here, he proves that the proxy solicitation itself,

9    rather than the particular defect in the solicitation materials, was an essential link

10   in the accomplishment of the transaction.   This objective test will avoid the

11   impracticalities of determining how many votes were affected. . . ."); *Stahl*, 967

12   F.2d at 337 ("The touchstone of a section 14(a) violation is a material

13   misstatement-something 'that a reasonable shareholder would consider . . .

14   important in deciding how to vote.'") (quoting *TSC Indus. v. Northway*, 426 U.S.

15   438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976)).   These same elements satisfy

16   plaintiffs' breach of fiduciary claim.   *Porter v. Texas Commerce Bancshares, Inc.*,

17   1989 WL 120358, *1128-29 (Del. Ch. Oct. 12, 1989 (unpublished)).

18        The falsity, materiality, and causation elements of plaintiffs' claims present

19   paradigmatic common questions that establish the predominance of common

20   issues.   No individual issues exist with regard to the alleged misrepresentations and

21   omissions because these misstatements are in the substantially identical proxy

22   statements PDC used to effect the Partnership mergers.   Nor does materiality

23   present individual issues "because 'the question of materiality . . . is an objective

24   one, involving the significance of an omitted or misrepresented fact to a reasonable

25   investor,' materiality can be proved through evidence common to the class.

26   Consequently, materiality is a common question for purposes of Rule 23(b)(3)."

27   *Amgen Inc.,* 133 S. Ct. at 1195-96 (quoting *TSC*, 426 U.S. at 445).   And there is no

28   question that the solicitations via the proxy statements were an essential link in the

1  mergers because the proxies were a required step in completing the mergers.

2  Moreover, defendants stood in the same fiduciary relationship to all Class

3  members as a result of PDC's position as general partner of each of the

4  Partnerships.

5  But most importantly, it is settled law that individual reliance on a

6  defendant's misrepresentation is not an element of a § 14 claim and that class

7  treatment is appropriate. *Mills*, 396 U.S. at 380-85;  *Selk v. St. Paul Ammonia*

8  *Prods., Inc.*, 597 F.2d 635, 639 (8th Cir. 1979) ("After *Mills*, we are not satisfied

9  that a separate showing of reliance on a material misrepresentation in proxy

10  solicitation materials can be required.");  *In re Heckman Corp. Sec. Litig.*, 2013

11  WL 2456104, at *10 (D. Del. June 6, 2013) (certifying class and holding "unlike a

12  claim for a violation under § 10(b), to recover damages under § 14(a) of the

13  Securities Exchange Act, plaintiff need not prove reliance because it is not an

14  element of the claim"); *In re Bank of America Corp., Securities, Derivative, and*

15  *Employee Retirement Income Sec. Act Litig.*, 281 F.R.D. 134, 141 (S.D.N.Y. 2012)

16  ("The allegation here, however, is that the defendants misled plaintiffs by making

17  false statements in proxy materials.   No individualized inquiry is required to

18  determine whether the proxy materials ran afoul of Section 14(a)."); *Koppel v.*

19  *4982 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) ("Defendants incorrectly assert

20  that individualized questions of reliance, materiality and causation threaten to

21  become the focus of this litigation and overwhelm plaintiffs' ability to effectively

22  prosecute a class action.   To establish causation under their § 14(a) claims,

23  plaintiffs need not prove individual reliance; rather they need prove that

24  defendants' omissions or misstatements were material."); *Pellman v. Cinerama,*

25  *Inc.*, 89 F.R.D. 386, 387 (S.D.N.Y. 1981) (to establish causation under "section

26  14(a), a plaintiff must prove that an omission was material; he need not prove that

27  he relied upon the absence of the information in making his decision.   This

28  principle is now settled.   Accordingly, courts have consistently refused to deny

class certification in omission cases because of purported non-reliance.") (internal citations omitted).  And even if individual reliance were relevant, which it is not in this case, it would not defeat predominance.  *See Joint Equity Comm. Of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422,  432-33 (C.D. Cal. 2012).

Defendants may contend the Supreme Court's recent decision in *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), requires that each class members' damages will necessarily have to be calculated individually and individual issues therefore predominate.   *Comcast* held no such thing.  Rather, in *Comcast,* an antitrust case, the Court found that the plaintiffs' damages model could not adequately calculate damages on a class-wide basis because the methodology employed by plaintiffs' expert was unconnected to the only legal theory of violation that was sustained by the trial court.

Where, as here, the proposed methods for calculating damages, described above, follow simply and directly from the theory of liability*, Comcast* is no barrier to certification.  As noted above, damages will be based on class-wide proof of the difference in value between what was paid to the limited partners and the value of what was given up, in the alternative, the gain received by defendants. Damages for any Class member will only involve the mechanical application of that measure to the number of units held by that Class member.   Plaintiffs' damages theories are well accepted.  As the Ninth Circuit explained in *Plaine v. McCabe*:

> The damages awarded a successful section 14(e) plaintiff, however, may go beyond a determination of a "fair price."  The purpose of the 1934 Act is to compensate plaintiffs injured by violations of the federal securities laws whether the measure of damages is out-of-pocket loss, benefit of the bargain, or some other appropriate standard.  *Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981).

"'[A]ctual damages' may include loss of possible profit, unless wholly speculative, from securing a merger agreement more favorable to plaintiff." *Dofflemyer v. W.F. Hall Printing Co.,* 558 F. Supp. 372, 380 (D. Del. 1983).

*Plaine v. McCabe*, 797 F.2d 713, 722 (9th Cir. 1986)[5]; *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 781 (3d Cir. 1976) (holding that where a merger proxy statement was misleading a plaintiffs' recovery was "not limited to out of pocket loss, a diminution in the value of one's investment, but may include loss of a possible profit or benefit, an addition to the value of one's investment"). The same is true with respect to plaintiffs' claims for breach of fiduciary duty.

Moreover, even after *Comcast*, courts continue to recognize that class certification is appropriate, even if some individualized calculation of damages is required. *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013), (Posner, J.) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought . . . to require that every member have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined . . . the fact that damages are not identical across all class members should not preclude class certification."). "As stated by our court of appeals in a class action alleging violations of Section 10(b) and Rule 10b–5 of the Exchange Act, 'The amount of damages is invariably an individual question and does not defeat class action treatment . . . Moreover, in this situation we are confident that should the class prevail the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task.'"

---

[5] While *Plaine* was a Section 14(e) case, not a Section 14(a) case, the distinction is immaterial because, as the Ninth Circuit stated, the two sections are "similar in purpose." *Plaine*, 797 F.2d at 721.

1   *Diamond Foods Sec. Litig.*, 2013 WL 1891382 at *12 (quoting *Blackie,* 524 F.2d

2   at 905).

3       As with scores of other certified securities class actions, plaintiffs' claims

4   turn predominantly on the common, class-wide issues of whether the proxy

5   statements were materially misleading.   The predominance requirement of Rule

6   23(b)(3) is fully and readily satisfied in this case.

7       **B.    A Class Action Is the Superior Method of Adjudication**

8       The second issue in the Rule 23(b)(3) analysis is whether the proposed class

9   action is "superior to other available methods for fairly and efficiently adjudicating

10  the controversy."   Fed. R. Civ. P. 23(b)(3).   "The superiority inquiry under Rule

11  23(b)(3) requires determination of whether the objectives of the particular class

12  action procedure will be achieved in the particular case."   *Hanlon*, 150 F.3d at

13  1023.    Superiority exists where "the alternative methods of resolution are

14  individual claims for a small amount of consequential damages" and "litigation

15  costs would dwarf potential recovery."   *Id.*

16      All of the relevant factors point to a class action being the superior method

17  of resolving this dispute.   The class action has long been recognized as a superior

18  method for resolving securities fraud cases because it provides the fairest and most

19  efficient adjudication.   *Blackie*, 524 F.2d at 903 ("The availability of the class

20  action to redress such frauds has been consistently upheld . . . ."); *Cooper*, 254

21  F.R.D. at 641 ("District courts have consistently recognized the common liability

22  issues involved in securities fraud cases are ideally suited for resolution by way of

23  a class action.").

24      Here, a class action is clearly the preferred procedure because damages for

25  many class members will be small enough that individual lawsuits are impractical

26  and the Class size is large enough – several thousand investors – that individual

27  lawsuits would heavily burden the courts.   Requiring each of the thousands of

28  Class members to bring individual suits would be cost-prohibitive, unmanageable,

and would unnecessarily consume extraordinary judicial resources.  *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("What would be unmanageable is the institution of numerous individual lawsuits.");  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001) ("While both the district court and this Court have acknowledged that difficulties in managing this large class action may arise, these problems pale in comparison to the burden on the courts that would result from trying the cases individually"). Moreover, certifying the proposed Class will "'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Fifth Moorings Condo., Inc. v. Shere,* 81 F.R.D. 712, 719 (S.D. Fla. 1979) (quoting Fed. R. Civ. P. 23, Advisory Committee Notes).

Because class treatment of this action would be more economical, efficient, and fair than other forms of adjudicating the controversy, and no manageability issues have arisen or are foreseeable, the superiority requirement of Rule 23(b)(3) is fully satisfied.

## VII.   CONCLUSION

This action presents claims that rely heavily on common proof and present few, if any, individual issues.  Courts within the Ninth Circuit and around the country routinely recognize such claims as appropriate for class treatment.  All of the Rule 23 requirements are satisfied in this case and it is therefore respectfully submitted the proposed Class should certified.

Dated:  October 15, 2013

MARC M. SELTZER
DAVIDA P. BROOK
SUSMAN GODFREY L.L.P.

WILLIAM R.H. MERRILL (*Pro Hac Vice*)
bmerrill@susmangodfrey.com
JAMES T. SOUTHWICK (*Pro Hac Vice*)
jsouthwick@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THOMAS G. FOLEY
ROBERT A. CURTIS
JUSTIN P. KARCZAG
FOLEY BEZEK BEHLE & CURTIS LLP

JOHN A. STILLMAN (43731)
jstillman@goodwildman.com
GOOD WILDMAN HEGNESS
& WALLEY
5000 Campus Drive
Newport Beach, CA  92660
Telephone:  (949) 955-1100
Fax:  (949) 833-0633


By___ */s/ Marc M. Seltzer*_____
        Marc M. Seltzer
Attorneys for Plaintiffs