MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
DAVIDA P. BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150

THOMAS G. FOLEY, JR. (65812)
tfoley@foleybezek.com
JUSTIN P. KARCZAG (223764)
jkarczag@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Fax: (805) 962-0722

Attorneys for Plaintiffs

(See Signature Page for Names and Addresses
of Additional Counsel for Plaintiffs)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| JEFFREY SCHULEIN, et al., | Case No. SACV 11-1891 AG(ANx) |
|---|---|
| Plaintiffs, vs. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| PETROLEUM DEVELOPMENT CORPORATION and DP 2004 MERGER SUB LLC, | |
| Defendants. | |
| AND RELATED COUNTER CLAIM | Date: March 16, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 10D<br>Judge: Hon. Andrew J. Guilford |

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................4

      A.   Procedural and Factual Background of This Litigation.......................4

      B.   Pre-Hearing Notice Program...................................................................7

III.  THE   SETTLEMENT   IS   FAIR,   REASONABLE,   AND
      ADEQUATE AND WARRANTS FINAL APPROVAL ...............................8

      A.   The Settlement is Entitled to a Presumption of Fairness ....................8

      B.   Even Without a Presumption of Fairness, the Settlement is
           "Fair, Reasonable, and Adequate" Under the Criteria Applied
           in the Ninth Circuit ..................................................................................9

           1.   The Strength of Plaintiffs' Case ................................................10

           2.   Risk, Complexity, Duration, and Expense of Further
                Litigation......................................................................................10

           3.   Likelihood of Maintaining Class Certification........................11

           4.   Settlement Value...........................................................................11

           5.   Extent of Discovery and Stage of the Proceedings .................12

           6.   The Experience and Views of Counsel .....................................12

           7.   The Reaction of Settlement Class Members ............................12

           8.   The   Settlement   is   the   Product   of   Arm's-Length
                Negotiations ..........................................................................13

IV.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT
      FUND  IS  FAIR,  REASONABLE,  AND  ADEQUATE  AND
      SHOULD BE APPROVED ......................................................................14

      A.   Legal Standard for Judicial Approval of a Plan of Allocation ...........14

      B.   Description of the Plan of Allocation .................................................14

      C.   The Plan of Allocation Should Be Approved ....................................16

i

V.   CONCLUSION ............................................................................................... 16

TABLE OF AUTHORITIES

<u>Cases</u>

*Churchill Vill. L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)........................................................................9, 10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)...............................................................8, 10, 14

*Ficalora v. Lockheed Cal. Co.*,
    751 F.2d 995 (9th Cir. 1985) ...........................................................................13

*Fulford v. Logitech, Inc.*,
    No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042
    (N.D. Cal. Mar. 5, 2010) ..................................................................................13

*Hughes v. Microsoft Corp.*,
    Nos. C 98-1646C, C 93-0178C, 2001 U.S. Dist. LEXIS 5976
    (W.D. Wash. Mar. 21, 2001) .............................................................................13

*In re Apple Inc. Secs. Litig.*,
    No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685
    (N.D. Cal. May 17, 2011) ..................................................................................13

*In re Global Crossing Secs. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................14

*In re Initial Pub. Offering Secs. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)...............................................................12

*In re Merrill Lynch & Co. Research Reports Secs. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................12

*In re Nortel Networks Corp. Secs. Litig.*,
    No. 01 1855, 2006 WL 3802198 (S.D.N.Y. Dec. 26, 2006) .............................12

*In re Portal Software Inc. Secs. Litig.*,
    2007 WL 4171201 (N.D. Cal. 2007) .................................................................14

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)............................................................................8

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
    (N.D. Cal. Aug. 2, 2011) ....................................................................................9

*Linney v. Cellular Alaska P'ship*,
    Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ,
    1997 U.S. Dist. LEXIS 24300,
    (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)...........................9

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)..............................................................................8

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)................................................................................13

<u>Rules</u>

Fed. R. Civ. P. 23(a) ..............................................................................................6

Fed. R. Civ. P. 23(b)(3) ....................................................................................2, 6

Fed. R. Civ. P. 23(e)(2)...........................................................................................8

## I.      **INTRODUCTION**

After three years of hard fought litigation and following months of arms' length negotiations, plaintiffs and defendants agreed to settle this exceptionally complex securities class action for $37.5 million in cash on the eve of trial.  The settlement provides significant monetary benefits for individual Class members.  It is estimated that Class members who submit valid claims will receive a minimum of $1,080 to $3,020 per limited partnership unit they owned.[1]

Pursuant to the Court's order entered on January 30, 2015 (Doc. No. 249), granting preliminary approval to the proposed settlement and directing notice to the Class previously certified by the Court, notice of the proposed settlement was mailed to more than 7,600 potential Class members.[2]  In response, *not a single Class member has submitted any objections to the proposed settlement, the proposed Plan of Allocation of the proceeds of the settlement or the fee and expense application of plaintiffs' counsel.*[3]  Moreover, in response to this recent notice only one additional Class member has opted out of the Class.[4]  Finally, although the deadline for submitting claims to participate in the settlement will not occur until May 13, 2015, over 2,300 Class members have already submitted claims.[5]

The favorable response of the Class to the $37.5 million all cash settlement, which represents a very substantial fraction of the highest damages sought by

---

[1] Some Class members owned multiple limited partnership units, others owned only a fraction of a limited partnership unit.

[2]   *See* Declaration of Kenneth Jue Re: Mailing and Posting of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form (the "Jue Decl."), dated March 9, 2015, and filed concurrently herewith, ¶ 5.

[3] *See* Jue Decl. ¶ 9.

[4]  In response to the notice notifying the Class of the pendency of this action as a class action and this Court's January 6, 2014, Order granting class certification for litigation purposes, six Class members requested exclusion.  Thus, there are a total of seven opt-outs from the Class.  Pursuant to the proposed settlement, these seven opt-outs are excluded from the Released Parties.  *See* Jue Decl. ¶ 3.

[5] *See* Jue Decl. ¶ 10.

1   plaintiffs, is a testament to the fact that the settlement is a truly outstanding result

2   for the Class.  This is particularly true given the risks of continued litigation.

3       As the Court knows, the case involved intricate legal and factual issues

4   regarding oil and gas reserve valuation methodologies, the adequacy of disclosures

5   made in the proxy statements seeking approval of the mergers, the nature and scope

6   of the defendants' fiduciary duties, and a host of other difficult and hotly contested

7   issues.  Defendants at all times denied, and continue to deny, that they had done

8   anything wrong or that plaintiffs had been underpaid for their limited partnership

9   interests, and vigorously contested all of plaintiffs' claims.

10      At the time the settlement was reached, the class had previously been

11  certified pursuant to Fed. R. Civ. P. 23(b)(3) for litigation purposes over the

12  vigorous opposition of defendants.  Defendants' had also moved for summary

13  adjudication as to several key questions.  Although the Court denied large parts of

14  that motion, most, if not all, of the issues raised by defendant was expected to be

15  raised anew at trial, and had the potential of gutting plaintiffs' case.  Further, even

16  if plaintiffs had tried the case and won on the issue of liability, the amount of

17  damages that the jury might award was far from certain and any judgment would

18  likely have been the subject of years of appellate review.

19      By virtue of the years spent litigating the case, and with the benefit of the

20  Court's pre-trial rulings, at the time they reached their settlement, both sides were

21  thoroughly knowledgeable about the strengths and weaknesses of plaintiffs' claims

22  and defendants' defenses, the ranges of potential outcomes at trial, the expected

23  testimony from the witnesses who would be called at trial, and the risks of litigation

24  to both plaintiffs and defendants.

25      Furthermore, the settlement now before the Court was the product of many

26  months of arms' length negotiations conducted in good faith with the assistance of

27  a very well respected retired federal magistrate judge who acted as the parties'

28  mediator.

The basic terms of the settlement are these:

- The defendants will pay or cause to be paid $37.5 million in cash for the benefit of the Class.  That amount has already been placed into an interest-bearing escrow account.  This all cash settlement was arrived at after the parties initially agreed to a settlement to be paid partly in cash and partly in the right to receive a portion of the revenues from forty-five oil and gas wells to be drilled in the future.  By agreeing to this change, plaintiffs eliminated the risks associated with fluctuations in the price of oil and gas, as well as the administrative burden and potential for future disputes over the administration of the wells and future revenue streams.  With the luxury of hindsight, plaintiffs are very pleased with that decision based on what has recently happened to oil price futures.  Indeed, the projected value of the revenue streams are now worth significantly less because of the dramatic drop in world-wide oil prices that took place after the settlement was reached.

- As noted above, the class was certified for litigation before a settlement was reached.  Thus, this is not a case where a class was certified solely for settlement purposes.

- There is no disproportionate *cy pres* element of the settlement.  If after an initial distribution is made to class members, funds remain in the settlement fund, those funds will be redistributed to class members who submitted authorized claims, assuming it is economically feasible to do so based on the amount remaining in the fund.  Thereafter, the residuum remaining, if any, may be distributed for charitable purpose or be escheated pursuant to unclaimed property laws, subject to approval of the Court.

- Thus, regardless of the amount claimed by Class members who submit proofs of claim, there will be no reversion of any settlement funds to the defendants or their insurers.

Plaintiffs' counsel believes that the settlement represents a highly successful outcome of the case. It has none of the features which have led some class action settlements to be criticized, perhaps unfairly.

Plaintiffs have also proposed a Plan of Allocation of the Net Settlement Fund, which is separate from the settlement. The Plan of Allocation was prepared in consultation with plaintiffs' experts and is based on the evidence adduced in this case and considerations of fairness and administrative efficiency that courts have held are appropriately taken into account in devising such plans. As with the settlement, no Class member has objected to this proposed plan.

It is respectfully submitted that based on all of the relevant factors, the settlement and Plan of Allocation are fair and reasonable and should be approved by the Court.

## II.  BACKGROUND

### A.  Procedural and Factual Background of This Litigation[6]

This is a class action brought on behalf of all persons and entities who owned limited partnership units in one or more of the following limited partnerships (the "Partnerships") who were cashed out of their limited partnership units pursuant to merger transactions with Defendant DP 2004 Merger Sub LLC:

- PDC 2002-D Limited Partnership,
- PDC 2003-A Limited Partnership,
- PDC 2003-B Limited Partnership,
- PDC 2003-C Limited Partnership,

---

[6] The terms used in this memorandum are the same as the defined terms used in the Stipulation and Agreement of Settlement (the "Stipulation", previously filed as Doc. No. 246-3).

4

- PDC 2003-D Limited Partnership,
- PDC 2004-A Limited Partnership,
- PDC 2004-B Limited Partnership,
- PDC 2004-C Limited Partnership,
- PDC 2004-D Limited Partnership,
- PDC 2005-A Limited Partnership,
- PDC 2005-B Limited Partnership, and
- Rockies Region Private Limited Partnership.

*See* Declaration of Marc M. Seltzer in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses (Doc. No. 254-1) (the "Seltzer Decl."), filed on January 29, 2015, ¶ 15.

Plaintiffs filed their complaint on December 7, 2011.  Defendants promptly moved for an order dismissing all of plaintiffs' claims alleged in the complaint.  In the alternative, defendants moved for an order staying the case pending certain West Virginia appraisal proceedings.  After extensive briefing, on June 15, 2012, the Court denied both motions.  On August 31, 2012, plaintiffs filed their first amended complaint, the currently operative complaint in this action.  *See* Seltzer Decl. ¶¶ 11, 12, & 14.

In the interim, the Court appointed Christopher J. Rodenfels, as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust, and Jeffrey Schulein and Linda Schulein, as Trustees of the Schulein Family Trust, as lead plaintiffs for the Class. The Court also appointed Marc M. Seltzer of Susman Godfrey L.L.P., Thomas G. Foley, Jr. of Foley Bezek Behle & Curtis L.L.P., and John A. Stillman of the firm now known as Good Wildman, as interim class counsel for plaintiffs.  *See* Seltzer Decl. ¶ 13.

Plaintiffs' first amended complaint alleges, among other things, that defendants violated the federal securities laws by reason of alleged misstatements and omissions in the proxy statements used to effectuate the cash-out mergers of the

5

partnerships, and that defendants breached fiduciary duties owed to the limited partners by effectuating the mergers.  *See* Seltzer Decl. ¶ 11.

On October 15, 2013, after conducting discovery, which involved numerous in-person meet and confer sessions as well as motion practice initiated by class plaintiffs and defendants, class plaintiffs moved the Court for an order certifying the Class pursuant to FED. R. CIV. P. 23(a) and (b)(3).  By its order dated January 6, 2014, the Court certified the Class for litigation purposes.  *See* Seltzer Decl. ¶¶ 15, 16.

Pretrial discovery closed in the spring of 2014.  Fact and expert discovery has been extensive.  During the course of the litigation, defendants and several third-parties produced to plaintiffs several hundreds of thousands of pages of documents, including tens of thousands of pages of highly-technical data spreadsheets detailing, for example, PDC's vertical and horizontal drilling programs.  Plaintiffs' counsel also took at least twenty fact witnesses' depositions and defended nine plaintiffs' depositions.  Moreover, plaintiffs' counsel retained and consulted with multiple experts on oil and gas and financial valuation issues.  *See* Seltzer Decl. ¶ 6.

On March 24, 2014, defendants filed a motion for partial summary judgment. On April 14, 2014, defendants filed a motion for decertification.  On May 19, 2014, the Court entered a minute order denying defendants' motion to decertify the Class and granting in part and denying in part defendants' motion for summary judgment. *See* Seltzer Decl. ¶ 17.

On or about January 16, 2014, class plaintiffs and defendants engaged the Hon. Edward A. Infante, a former United States Magistrate Judge and highly experienced settlement mediator, to assist them in exploring a potential negotiated resolution of the claims asserted against defendants.  In connection with the mediation, the parties prepared mediation statements and updates regarding the status of the action.  *See* Seltzer Decl. ¶ 18.

On September 15, 2014, following multiple lengthy mediation sessions with Judge Infante, conducted in person and by telephone, class plaintiffs and defendants entered into a binding Memorandum of Understanding to settle the action for $17.5 million in cash and net profit interests in the revenues to be generated in the future in forty-five yet-to-be-drilled horizontal oil and gas wells.  The Memorandum of Understanding is attached as Exhibit 1 to the Stipulation.  *See* Seltzer Decl. ¶ 19.

Subsequent to the signing of the Memorandum of Understanding, defendants proposed an alternative settlement.  This proposal eliminated the previously agreed upon net profit interests in the horizontal oil and gas wells in exchange for an upfront cash payment of $20 million.  The alternative settlement thus provides for a total upfront cash settlement of $37.5 million.  All but one the class plaintiffs agreed to accept this alternative all-cash proposal.[7]  The Stipulation is based on defendants' all-cash alternative settlement proposal, which is intended to supersede (subject to certain termination provisions therein) the payment structure set forth in the Memorandum of Understanding (attached as Exhibit 1 to the Stipulation).  *See* Seltzer Decl. ¶ 20.

## B.    Pre-Hearing Notice Program

Pursuant to and in compliance with the Court's order, beginning on January 14, 2015, the Claims Administrator caused the Notice of Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form (the "Proof of Claim") (together with the Notice, the "Notice Package") to be mailed to all class members who could be identified by reasonable effort.  *See* Declaration of Kenneth Jue Re: Mailing and Posting of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form (the "Jue Decl.") ¶ 5 & Exs. A & B, filed

---

[7]  One of the named plaintiffs, Christopher J. Rodenfels, as Trustee of The Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000, has requested to be excluded from the Class.  The proposed settlement does not, therefore, resolve Mr. Rodenfels' claims against PDC or PDC's counterclaim against Mr. Rodenfels.

concurrently herewith; *see also* Seltzer Decl. ¶ 25.  As of March 6, 2015, a total of 7,705 Notice Packages have been mailed.  *See* Jue Decl. ¶¶ 5, 6.  On January 14, 2015, the Notice and Proof of Claim were also posted on the dedicated settlement website established by the Claims Administrator for this case.  *See* Jue Decl. ¶ 7; *see also* Seltzer Decl. ¶ 26.  Accordingly, the Notice and Proof of Claim were made publicly available 30 days before the deadline for Class members to object and 61 days before the settlement hearing.

In addition, on February 2, 2015, plaintiffs' notice of motion and motion for attorneys' fees and expenses, and accompanying declarations, were filed with the Court and published on the dedicated settlement website.  *See* Jue Decl. ¶ 7.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

A court may approve a settlement that binds class members only after a hearing and a finding that the settlement is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  Federal law favors settlements in class action cases: "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("strong judicial policy ... favors settlements") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As the Ninth Circuit emphasized in *Officers for Justice*, the trial court must scrutinize the settlement only "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  688 F.2d at 625.

### A.    The Settlement is Entitled to a Presumption of Fairness

There is a presumption of fairness when experienced class counsel are involved and the settlement is reached through arm's-length negotiations after

relevant discovery has taken place. *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *24-25 (N.D. Cal. Aug. 2, 2011).  Each of these criteria is satisfied here.  The attorneys for both parties are highly experienced in conducting complex litigation.  The settlement was the product of highly adversarial, arm's-length negotiations and included several days of formal in-person mediation session.  *See* Seltzer Decl. ¶¶ 18-21.  Finally, fact and expert discovery were both completed prior to the parties' final mediation sessions.  *See* Seltzer Decl. ¶ 6.  Indeed, prior to entering into the settlement, the parties had the benefit of the Court's decisions on summary adjudication, *Daubert* motions, and motions *in limine*.  *See id*.

> ### B.   Even Without a Presumption of Fairness, the Settlement is "Fair, Reasonable, and Adequate" Under the Criteria Applied in the Ninth Circuit

In the Ninth Circuit, the factors that courts consider in assessing the fairness, reasonableness, and adequacy of a settlement are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement.[8] *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  In addition, "the settlement may not be the product

---

[8] In *Churchill,* the Court identified an eighth "non-exclusive" factor, the presence of a governmental participant.  361 F.3d at 575-76.  Plaintiffs here did not have the benefit of a governmental participant.

1   of collusion among the negotiating parties." *Id.* at 576 (citing *Class Plaintiffs*, 955
2   F.2d at 1290).  Each of these factors supports approval of the settlement.

3             **1.**        **The Strength of Plaintiffs' Case**

4         As the record in this litigation vividly demonstrates, this was a hotly
5   contested case which was settled only after legal and factual issues regarding
6   plaintiffs' claims, and the defenses thereto, were thoroughly investigated and
7   developed as a result of intensive and vigorously contested litigation.  *See* Seltzer
8   Decl. ¶ 5-6.  As made apparent by their summary judgment motion, defendants
9   challenged almost every legal and factual aspect of plaintiffs' case, including, but
10  not necessarily limited to:  (1) whether PDC had the contractual right to drill new
11  wells for each partnership after one year of that partnership's existence; (2) whether
12  PDC had the contractual right to borrow or raise new funds on behalf of the
13  partnerships; (3) whether PDC had a duty to amend the partnership agreements or
14  negotiate other transactions; (4) whether scienter is required for section 14(a)
15  liability; (5) whether PDC adequately disclosed the discount rates used to value the
16  partnerships' assets; (6) whether PDC's alleged omissions concerning "probable"
17  and "possible" oil and gas reserves are actionable; (7) whether PDC adequately
18  disclosed the work of the Special Committee; (8) what rights the partnerships
19  owned; and (9) whether the Class is entitled to punitive damages.  *See* Doc. No.
20  122; *see also* Seltzer Decl. ¶ 41.  A loss on any of these issues would have severely
21  undermined plaintiffs' case.  *See* Seltzer Decl. ¶ 41.

22        Moreover, even assuming that plaintiffs were successful in proving liability,
23  the amount, if any, of any damages proximately caused by defendants' conduct was
24  hotly disputed.

25            **2.**        **Risk, Complexity, Duration, and Expense of Further**
26                  **Litigation**

27        If it had not settled, this case would have resulted in a lengthy and
28  unpredictable trial with numerous contested legal and factual issues.  Whatever the

1  outcome of the trial, there would undoubtedly have been a lengthy appeals process

2  with an uncertain outcome and years of potential delay.  *See* Seltzer Decl. ¶ 43.

3  ### 3.    Likelihood of Maintaining Class Certification

4  Defendants vigorously opposed plaintiffs' motion for class certification, *see*

5  Doc. No. 164, and, even after the Court had certified the Class, moved for

6  decertification at the close of discovery, *see* Doc. No. 151.  Although the Court

7  denied this motion, it noted that "Defendants are correct that there are issues unique

8  to each partnership."  *See* Doc. No. 200 at 18.  As the parties prepared for trial, it

9  seemed likely that defendants would once again move to decertify the Class.  *See*

10  Seltzer Decl. ¶ 42.

11  ### 4.    Settlement Value

12  The $37.5 million settlement plainly provides substantial value to the class

13  members.  *See* Seltzer Decl. ¶¶ 33-37.  As explained in plaintiffs' notice, if the

14  Court approves the application by plaintiffs' counsel for attorneys' fees and

15  expenses, and the Plan of Allocation, it is estimated that Class members who

16  submit proofs of claim that are allowed by the Court will receive not less than

17  $1,080 to $3,020 per limited partnership unit they owned, depending upon the

18  partnership or partnerships in which they owned units.[9]  This is a significant

19  amount, especially where many Class members owned several units across multiple

20  partnerships.

21  The settlement also represents approximately 20% of the estimate of

22  aggregate fair value damages (excluding prejudgment interest) deemed reasonable

23  by plaintiffs' expert; and approximately 16% of the estimate of aggregate

24  disgorgement damages (excluding prejudgment interest) deemed reasonable by

25  plaintiffs' expert.  A settlement recovery representing 16% - 20% of plaintiffs'

26  estimated aggregate damages compares very favorably to other class action

27  _____

[9] As previously noted, some Class members owned only a fraction of a limited
28  partnership unit.

11

settlements.  Indeed, courts routinely approve PSLRA settlements that recover a far smaller percentage of maximum damages than here.  *See, e.g.*, *In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving settlement representing "two percent of the aggregate expected recovery"); *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement representing "between approximately 3% and 7% of estimated damages" as "within the range of reasonableness"); *In re Nortel Networks Corp. Secs. Litig.*, No. 01 1855, 2006 WL 3802198, at *6 (S.D.N.Y. Dec. 26, 2006) (approving settlement representing "about 10% of Lead Plaintiff's original . . . estimate of the maximum possible damages").

The recovery obtained for the Class is substantial not only in absolute terms, but when considered against the significant risks of litigation plaintiffs confronted, as discussed above.  *See* Seltzer Decl. ¶¶33-37.

### 5.    Extent of Discovery and Stage of the Proceedings

As discussed above, fact and expert discovery were both completed prior to the parties' final mediation sessions.  What is more, the parties had the benefit of the Court's decisions on summary adjudication, *Daubert* motions, and motions *in limine*.  Plaintiffs thus had more than ample information to evaluate the strength of the case, as well as the reasonableness and adequacy of the settlement.  *See* Seltzer Decl. ¶ 6, 21.

### 6.    The Experience and Views of Counsel

Experienced counsel for both parties recommend approval of the settlement. *See* Seltzer Decl. ¶¶33-37.

### 7.    The Reaction of Settlement Class Members

The reaction of the Settlement Class members has been overwhelmingly favorable.  As discussed above, not a single Class member has objected to either the settlement, plaintiffs' application for an award of attorneys' fees and expenses, or the proposed Plan of Allocation, and the Claims Administrator received just one

new request for exclusion from the Class.  *See* Jue Decl. ¶¶8-9.  Combined with the six opt-outs received following certification of the Class for litigation purposes, the total number of opt-outs in this case is just seven.  *See* Jue Decl. ¶¶ 3, 8.  What is more, approximately 2,313 claim forms have already been submitted by members of the Class.  *See* Jue Decl. ¶ 10.  This equals approximately 30% of the total membership of the Class.  Such an overwhelmingly favorable response to the settlement is a strong indicator that the settlement is fair, reasonable and adequate and should be approved.  *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010).

**8.      The Settlement is the Product of Arm's-Length Negotiations**

The settlement here is the product of extensive arm's-length negotiations among experienced counsel.  Both sides have demonstrated that they were fully prepared to litigate this case through final judgment if no acceptable resolution could be reached.  *See* Seltzer Decl. ¶¶ 11-17; *see also Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985) (stating that "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties").

Moreover, the parties participated in mediation supervised by the Hon. Edward A. Infante, further demonstrating the non-collusive nature of the settlement. *See* Seltzer Decl. ¶¶ 18-21; *see also In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685, at *10 (N.D. Cal. May 17, 2011) ("Because the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length, the Court is satisfied that the settlement is not the product of collusion."); *Hughes v. Microsoft Corp.*, Nos. C 98-1646C, C 93-0178C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21,

2001) (settlement mediated with assistance of appointed settlement judge demonstrates lack of fraud or collusion).

**IV.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED**

**A.   Legal Standard for Judicial Approval of a Plan of Allocation**

Approval of a plan of allocation of settlement proceeds is governed by the same overarching standard of fairness applied to the settlement.  *See In re Portal Software Inc. Secs. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. 2007) ("The court turns next to the proposed plan of allocation, which must be fair, reasonable and adequate.") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992)).  "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'"  *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

**B.   Description of the Plan of Allocation**

In order to calculate each Authorized Claimant's Recognized Loss, plaintiffs' counsel worked with consulting experts to calculate the amount of claimed damages for each Partnership unit.  As shown in the table below, this amount was calculated by comparing the cash out merger price paid for each partnership unit with the estimated fair value of each Partnership unit.

| Partnership Name | Merger Price Paid Per Unit | Plaintiffs' Estimated Fair Value Price Per Unit | Recognized Loss |
|---|---|---|---|
| 2002-D | $4,024 | $13,673 | $9,649 |
| 2003-A | $8,125 | $31,002 | $22,877 |
| 2003-B | $7,864 | $29,278 | $21,414 |
| 2003-C | $5,603 | $15,282 | $9,679 |
| 2003-D | $5,795 | $15,268 | $9,473 |
| 2004-A | $8,400 | $18,222 | $9,822 |

| | | | |
|---|---|---|---|
| 2004-B | $8,250 | $17,586 | $9,336 |
| 2004-C | $5,650 | $13,874 | $8,224 |
| 2004-D | $7,544 | $19,930 | $12,386 |
| 2005-A | $8,060 | $18,544 | $10,484 |
| 2005-B | $6,544 | $14,722 | $8,178 |
| RRLP | $8,182 | $23,828 | $15,646 |

The sum of an Authorized Claimant's Recognized Loss amounts will be the Authorized Claimant's "Recognized Claim." An Authorized Claimant's Recognized Claim shall be the amount used by the Claims Administrator to calculate the claimant's *pro rata* share of the Net Settlement Fund. If the sum total of recognized claims of all claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

Distribution to Authorized Claimants will be made after all claims have been processed and after the Court has approved the Claims Administrator's administrative determinations. If there is any balance remaining in the Net Settlement Fund after six months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator, in consultation with plaintiffs' counsel, shall, if feasible and economical, reallocate such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Any balance that still remains in the Net Settlement Fund, after the additional distribution, shall be contributed to non-sectarian, not-for-profit charitable organizations serving the public interest, and reasonably related to the goals of the action, as designated by plaintiffs' counsel and approved by the Court, or may, without further order of the Court, be escheated pursuant to appropriate unclaimed property law.

1

### C.    The Plan of Allocation Should Be Approved

The Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among Authorized Claimants based on their respective recognized losses.  Plaintiffs submit that the Plan of Allocation, which was described in detail in the Notice, is fair, reasonable, and adequate and should be approved.

### V.    <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs, on behalf of the Class, respectfully request that this Court grant final approval to the proposed Settlement, approve the Plan of Allocation of the Net Settlement Fund, and enter the proposed Order Approving Class Action Settlement and Plan of Allocation and the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith.


Dated March 9, 2015                          Respectfully submitted,


MARC M. SELTZER
DAVIDA P. BROOK
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.

WILLIAM R.H. MERRILL
JAMES T. SOUTHWICK
SUSMAN GODFREY L.L.P.

THOMAS G. FOLEY
ROBERT A. CURTIS
JUSTIN P. KARCZAG
FOLEY BEZEK BEHLE & CURTIS, LLP

JOHN A. STILLMAN
GOOD WILDMAN
19000 MacArthur, Suite 575
Irvine, CA  92612
Telephone:  (949) 955-1100
Fax:  (949) 833-0633


By    */s/Marc M. Seltzer*
        Marc M. Seltzer
        Attorneys for Plaintiffs